[L.A. No. 29964. In Bank. July 17, 1972.]

DONALD L., a Minor, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

594

## COUNSEL

Richard S. Buckley, Public Defender, James L. McCormick, William R. Hawes, John J. Gibbons, Laurance S. Smith and Damon R. Swank, Deputy Public Defenders, and James M. Epstein for Petitioner.

William M. Siegel, County Counsel (Santa Clara), Robert J. Menifee, Deputy County Counsel, Robert L. Walker, Peter Bull and Edward Steinman as Amici Curiae on behalf of Petitioner.

Joseph P. Busch, Jr., District Attorney, Harry Wood, Robert J. Lord, Arnold T. Guminski and Daniel L. Bershin, Deputy District Attorneys, John D. Maharg, County Counsel, Harold S. Vites and Douglas C. Miller, Deputy County Counsel, for Respondent and for Real Party in Interest.

## OPINION

**WRIGHT, C. J.**—A petition filed in the juvenile court alleged that Donald L., a minor 17 years of age, was within that court's jurisdiction because he had committed four robberies and one murder. (Welf. & Inst. Code, § 602.)[1] When the minor was brought before the juvenile court on the section 602 petition the court appointed the public defender to represent him. A time was set for a hearing as to his fitness for juvenile court treatment prior to a determination of the jurisdictional issue, and the court ordered petitioner detained. At the initial hearing as to fitness a referee found that the minor was amenable to juvenile court treatment. The presiding judge of the juvenile court ordered a rehearing. (§ 559.)[2] After a de novo hearing (§ 560)[3] another juvenile court judge found the minor unfit for such treatment and ordered him prosecuted under the general criminal law.

The minor[4] now seeks a writ of prohibition to restrain the criminal prosecution and a writ of mandate to compel the juvenile court to reconsider his amenability to treatment through its facilities. For reasons hereafter stated we conclude that he is not entitled to the relief sought.

[1]Unless otherwise stated, section numbers herein refer to sections of the Welfare and Institutions Code. Section 602 provides in part that a minor who violates any law of this state defining crime is within the jurisdiction and may be adjudged to be a ward of the juvenile court.

[2]Section 559: "A judge of the juvenile court may, on his own motion, order a rehearing of any matter heard before a referee."

[3]Section 560: "All rehearings of matters heard before a referee shall be before a judge of the juvenile court and shall be conducted de novo."

[4]For convenience we refer to Donald, who was born in 1953, as "the minor." although by Statutes 1971, chapter 1748, effective March 4, 1972, after the institution of this proceeding, the age of majority in section 602 and other statutes was changed from 21 years to 18 years.

## Propriety of the Juvenile Court's Determination of the Issue of Fitness Prior to a Jurisdictional Hearing

At the outset of the juvenile court proceedings the minor raised the issue of the juvenile court's jurisdiction by denying the allegations of the section 602 petition that he had violated criminal statutes. On motion of the district attorney and over the objection of the minor's counsel the court then ordered a hearing on the issue of the minor's fitness for treatment as a juvenile. Thus we are faced with the question whether the juvenile court acted properly in considering and deciding the issue of fitness before it reached the issue of jurisdiction.

The California Juvenile Court Law, unlike the juvenile court statutes of many other jurisdictions,[5] does not provide that a hearing on the issue of amenability to treatment as a juvenile shall be held before the commencement of the hearing on the issue of jurisdiction. Instead section 707 provides in pertinent part that *"At any time during a hearing* upon a petition alleging that a minor is, by reason of violation of any criminal statute . . . , a person described in Section 602, when substantial evidence has been adduced to support a finding that the minor was 16 years of age or older at the time of the alleged commission of such offense and that the minor would not be amenable to the care, treatment and training program available through the facilities of the juvenile court . . . , the court may make a finding noted in the minutes of the court that the minor is not a fit and proper subject to be dealt with under this chapter [the Juvenile Court Law], and the court shall direct the district attorney . . . to prosecute the person under the applicable criminal statute . . . and thereafter dismiss the petition . . . ." (Italics added.)

"[A] hearing upon a petition alleging that a minor is . . . a person described in Section 602" because he has violated a criminal statute may be a detention hearing (§ 630 et seq.; see *In re William M.* (1970) 3 Cal.3d 16 [89 Cal.Rptr. 33, 473 P.2d 737]), a jurisdictional hearing or a dispositional hearing (§§ 701, 702; see *In re Gladys R.* (1970) 1 Cal.3d 855

---

[5] *An illustrative statute is that of the District of Columbia (D. C. Code, § 16-2307, subd. (a): hearing as to transfer to the adult court may occur "prior to a factfinding hearing on the petition"). Similar provisions are found in Colorado (CRS 63, § 22-3-6, subd. (4)), Maryland (Md. Code Ann., art. 26, § 70-16), New Hampshire (Rev. Stats. §§ 169:21; 169:21-a), North Dakota (Century Code, § 27-20-34), Tennessee (Tenn. Code Ann., § 37-234, subd.(a)), Texas (Vernon's Ann. Civil Stats., art. 2338-1, § 6), and Wyoming (Wyo. Stats., § 14-115.38).*

This order of procedure is also recommended in proposals of experts on juvenile justice. (Rule 9, Model Rules for Juvenile Courts, Council of Judges of the National Council on Crime and Delinquency (1968); Uniform Juvenile Court Act, § 34(a) (1968); Family and Juvenile Court Acts (1969) p. 31, Children's Bureau Publication 472, U. S. Government Printing Office.)

[83 Cal.Rptr. 671, 464 P.2d 127]). ■ Although section 707 does not additionally provide for a separate, noticed fitness hearing, the statute must be "read in the context of constitutional principles relating to due process" (*Kent* v. *United States* (1966) 383 U.S. 541, 557 [16 L.Ed.2d 84, 95, 86 S.Ct. 1045]) so as to require a hearing with adequate notice to the minor and his counsel on the issue of the minor's fitness for care and treatment under the Juvenile Court Law. The statute further requires that "The court shall cause the probation officer to investigate and submit a report on the behavioral patterns of the person being considered for unfitness" (§ 707), and due process requires a hearing on that issue with access by the minor's counsel to the reports considered by the court. (*Kent* v. *United States, supra.*)

The history of section 707 indicates that the Legislature contemplated that the hearing on the issue of fitness might be held before the hearing on the jurisdictional issue of whether the minor violated a criminal statute as alleged in the section 602 petition. The 1960 Report of the Governor's Special Study Commission on Juvenile Justice which led to the 1961 revision of our Juvenile Court Law included a recommendation that the issue of unfitness be considered at the dispositional hearing after the issue of jurisdiction had been decided, and that a direction that the minor be prosecuted in criminal court should be one of the dispositions which the juvenile court could make. (Report, Part I, p. 76, proposed § 725.) The Legislature rejected this proposal and instead enacted the provision of section 707 that a finding of unfitness and an order that the minor be prosecuted in the criminal court could be made "[a]t any time during a hearing" on a section 602 petition alleging violation of a criminal law.

Also as part of the 1961 revision of the Juvenile Court Law the Legislature provided for a bifurcated procedure by which the court must consider evidence as to disposition, including the probation officer's social study of the minor, only *after* it has found that the minor is within its jurisdiction. (§§ 701, 702, 706; *In re Gladys R.* (1970) *supra,* 1 Cal.3d 855, 859-860.) ■ In light of these statutory provisions foreclosing the juvenile court from considering a probation officer's social study before or during the jurisdictional hearing, and in light of elementary considerations of orderly procedure, the Legislature could not have intended that determination of the fitness issue, which requires the court to consider a probation officer's behavioral study, should be made in the midst of a hearing on the issue of jurisdiction. Therefore, we disapprove statements in *People* v. *Brown* (1970) 13 Cal.App.3d 876, 881 [91 Cal.Rptr. 904], and *People* v. *McFarland* (1971) 17 Cal.App.3d 807, 814 [95 Cal.Rptr. 369], that the determination as to fitness under the Juvenile Court Law

and transfer to the criminal court is to be made *"during* the jurisdictional hearing."

The usual practice as to a fitness hearing in many juvenile courts in this state is that followed in the case before us. A hearing on the issue is noticed and held before the jurisdictional hearing. This practice of deciding the issue of fitness "at the very outset" is recommended in the California Juvenile Court Benchbook (Cal. College of Trial Judges (1971) § 10.4, pp. 190-191) and we commend it. ■ We further point out that, as stated in the Benchbook and as compelled by the reasoning of *In re Gladys R., supra,* if the referee or judge who hears the issue of fitness decides that the minor should be retained in the juvenile court, he may not thereafter properly preside at a contested hearing on the issue of jurisdiction. Basic principles of fairness underlying the Juvenile Court Law require that the minor be protected against premature resolution of the jurisdictional issue on the basis of incompetent background material adduced on the issue of amenability to juvenile court treatment.

### Propriety of the Order for Rehearing on the Issue of Fitness

As we have set forth, before the referee's determination of fitness became final the presiding judge of the juvenile court, ex parte and on his own motion, ordered that issue reheard. (§ 559, quoted *supra,* fn. 2.) The minor's counsel immediately learned of that order, requested a reporter's transcript of the hearing before the referee, and the presiding judge denied the request. In the proceeding before us the minor asserts that the rehearing was ordered at the informal ex parte request of the district attorney. The Juvenile Court Law does not require and the court did not make any record stating the grounds for granting the rehearing. An affidavit of the presiding judge filed in the proceeding before us states that "It is my policy to listen informally and ex parte to the request of anyone desiring a rehearing and upon receiving the request to then make an independent review of the record. After an independent review of the record, I then grant or deny the request, depending upon the dictates of the record. . . . I have no independent recollection as to what caused me to review the referee's order [in this case]."

The minor urges that the district attorney's request for a rehearing violated rule 16 of the Rules of Professional Conduct of the State Bar of California[6] and the judge's action on that request violated canon 15

---

[6]Rule 16 provides that "A member of the State Bar shall not, in the absence of opposing counsel, communicate with or argue to a judge . . . except in open court upon the merits of a contested matter pending before such judge. . . . This rule shall not apply to ex parte matters." (1 Cal.3d at p. Rules 56.)

of the Canons of Judicial Ethics adopted by the Conference of California Judges,[7] and that this illegality in the procedure that led to the rehearing order invalidated all subsequent proceedings in the juvenile court.

As we have stated, the record as to the factual basis of this contention is not clear. Assuming, however, that the presiding judge did order a rehearing at the request of the district attorney rather than solely "on his own motion," we can find no prejudice to the minor since the issue of fitness was fully and fairly reheard de novo by a judge other than the one who ordered the rehearing.

■ We point out, however, that nothing in the Juvenile Court Law supports the presiding judge's stated policy of acting upon informal requests for rehearing without affording the parties opportunity to be heard. Such action, moreover, may well be of doubtful constitutionality. In view of the requirement that hearings on the issues of the minor's transfer to the criminal court and of jurisdiction of the juvenile court "must measure up to the essentials of due process and fair treatment" (*Kent* v. *United States* (1966) *supra*, 383 U.S. 541, 562 [16 L.Ed.2d 84, 97-98]; *In re Gault* (1967) 387 U.S. 1, 30 [18 L.Ed.2d 527, 547-548, 87 S.Ct. 1428]) we cannot approve any suggestion that other steps in the juvenile court process may be taken without affording the minor notice and an opportunity to be heard.

### Denial of the Minor's Motion for Appointment of a Psychiatrist

Prior to the first fitness hearing the juvenile court referees twice denied the minor's motion that a psychiatrist be appointed to examine him and present evidence on the issue of his fitness for treatment as a juvenile. The minor contends that the denial of the motion was an abuse of discretion because an up-to-date psychiatric evaluation by an expert was essential to a finding on the issue of the treatment which would best serve his needs.

■ Testimony of expert witnesses may guide the juvenile court's decision on the minor's amenability to treatment through the facilities of the court (*Jimmy H.* v. *Superior Court* (1970) 3 Cal.3d 709, 714 [91 Cal.Rptr. 600, 478 P.2d 32]), but the only particular kind of evidence which *must* be furnished and considered by the court is a probation officer's report on the minor's behavioral patterns. (*Id.*) ■ As will appear from the discussion of the sufficiency of the evidence to support the court's finding

---

[7]Canon 15 provides that "A judge should not permit private interviews, arguments or communications designed to influence his judicial action, where interests to be affected thereby are not represented before him, except in cases where provision is made by law for ex parte application." (1A McKinney's New Cal. Digest, p. 178.)

of unfitness, *infra,* evidence of a current psychiatric evaluation of the minor, whatever its results might have been, would have been cumulative, and the court's failure to require such an evaluation was not an abuse of discretion.

### Evidence of Oregon Juvenile Court Proceedings

■ On the issue of fitness the minor's counsel introduced in evidence records of the juvenile court in Oregon where the minor had been found delinquent and committed to a juvenile institution. The minor now contends that the California court should not have considered the record of the 1968 Oregon juvenile court commitment because it does not show that he was afforded the right to counsel in that state which was established by *In re Gault* (1967) *supra,* 387 U.S. 1.

This contention, made for the first time in this court, comes too late. Adequate guidelines for objection to the evidence of the Oregon commitment on the ground that it was obtained in violation of the right to counsel were available when the fitness hearing was held. (See *People* v. *Coffey* (1967) 67 Cal.2d 204, 215 [60 Cal.Rptr. 457, 430 P.2d 15].) Instead of raising the objection in the trial court the minor's counsel himself introduced the evidence. His belated change in position in this court is based on the trial court's expressed reliance on the Oregon records as showing that the minor had not benefited by prior juvenile court treatment.

### Sufficiency of the Evidence of Unfitness

■ The juvenile court stated that its finding on the issue of fitness was based on the following factors: "I think here you do have a well-planned burglary, which turned into a robbery, which resulted in a death, various other robberies, all of which indicate a complete disregard for law, which I consider makes a matter most serious. You have a minor seventeen and a half years of age . . . who has had the advantage of a training program in the State of Oregon, and from all that I can gather from reading the records of that training program, has gained absolutely nothing from it. You have a minor who has used drugs to excess." The court's conclusionary statements are supported by a substantial factual record.

The court properly took into consideration the nature of the alleged crimes, the circumstances surrounding their commission, and the minor's past record and lack of rehabilitation in the Oregon juvenile court. (*Jimmy H.* v. *Superior Court* (1970) *supra,* 3 Cal.3d 709, 716.) The Oregon records show no background of prior violent behavior, but they sufficiently show

a "behavior pattern" of delinquency beginning before and not improving after his commitment as a juvenile delinquent in 1968 at the age of 14.

The minor complains that the behavioral reports furnished by the California probation officers at his fitness hearing were based solely on a review of past records; that the probation officers did not interview him or obtain any information as to his present amenability to California juvenile court treatment. His criticism of the behavioral reports is warranted. The officers who prepared the reports, however, testified at the fitness hearing, and the inadequacies of their written reports were explored under examination by the minor's counsel.

As previously stated, the minor complains of the lack of a current evaluation by a psychiatrist or psychologist. Current evaluations were supplied by the testimony of two witnesses, a teacher and a psychiatric social worker employed as a probation officer. These witnesses had almost daily contact with the minor during the more than three months of his detention at juvenile hall prior to the second fitness hearing. Their testimony as to his behavior and attitudes was favorable to him. On the record before us, however, the trial court's finding against the minor on the ultimate issue of fitness must be sustained.

### Constitutionality of Section 707

██ The minor contends that no sufficient standards for transfer of a juvenile to criminal court are provided by the statutory phrases "not amenable" and "not a fit and proper subject" to be treated under the facilities of the juvenile court and that unless this court can provide a narrow, strict construction of those phrases which will preclude the possibility of trial courts abusing their discretion it must strike down the statute as unconstitutionally vague.

In *Jimmy. H.* v. *Superior Court* (1970) *supra,* 3 Cal.3d 709, 714, we recognized that the standards lack explicit definition. In *People* v. *Smith* (1971) 5 Cal.3d 313, 317 [96 Cal.Rptr. 13, 486 P.2d 1213], we stated that "The factors upon which an unsuitability finding is based are generally those which indicate a relatively poor prognosis for rehabilitation . . . ." In both those cases we enumerated such factors. Since proper operation of the Juvenile Court Law is predicated on treating each minor as an individual (*In re William M.* (1970) 3 Cal.3d 16, 31 [89 Cal.Rptr. 33, 473 P.2d 737]) any attempt to explicate the standards with greater particularity appears not merely unnecessary but undesirable as likely to set up mechanical categories which the spirit of the law forbids.[8]

---

[8]Compare the comment concerning the Model Youth Authority Act's provision

The alternative writs heretofore issued are discharged and the petition for peremptory writs of prohibition and mandate is denied.

McComb, J., Peters, J., Tobriner, J., Mosk, J., Burke, J., and Sullivan, J., concurred.

---

that the authority must release every person committed to it as soon as it believes that " 'there is reasonable probability that he can be given full liberty without danger to the public,' " that "This section of the Act does not purport to set up rule-of-thumb standards by which the Authority must determine fitness, because no such standards have yet been discovered. The fitness for discharge is necessarily left to the intelligent discretion of the Authority, just as existing law leaves it to the discretion of the judges when they suspend sentences, to parole boards, to administrators of juvenile institutions, and to the directors of hospitals for diseased or the insane." (Waite, *The Youth Correction Authority Act* (1942) 9 Law & Contemp. Prob. 600, 614.)