[Crim. No. 1266. Fifth Dist. Jan. 11, 1973.]

THE PEOPLE, Plaintiff and Respondent, v.
JIMMIE DUANE ALLEN, Defendant and Appellant.

### COUNSEL

Norman L. Fletcher, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Edward A. Hinz, Jr., Chief Assistant Attorney General, William E. James, Assistant Attorney General, Charles P. Just, Roger E. Venturi and Edward W. Bergtholdt, Deputy Attorneys General, for Plaintiff and Respondent.

### OPINION

**BROWN (G. A.), P. J.**—This is an appeal from a judgment of commitment of Jimmie Duane Allen to the Atascadero State Hospital, entered upon a jury verdict finding the appellant to be a mentally disordered sex offender (hereinafter referred to as "M.D.S.O.") pursuant to the provisions of Welfare and Institutions Code sections 6300 and 6321.

The nucleus of the appeal is whether the trial court committed prejudicial error in permitting the jury to consider appellant's possible medical-psychiatric treatment and benefits that may flow therefrom in their deliberations on the issue of whether he was or was not an M.D.S.O. The question is one of first impression. We have concluded that it was serious error which, under the circumstances, requires reversal.

Appellant pleaded guilty in the municipal court to contributing to the delinquency of a minor in violation of Penal Code section 272, a misdemeanor. Proceedings were adjourned and the cause was certified to the superior court for mentally disordered sex offender proceedings pursuant to division VI, part II, chapter 2, sections 6300 through 6330 of the Welfare and Institutions Code.[1]

---

[1] All references herein will be to the Welfare and Institutions Code unless otherwise indicated.

After appropriate proceedings, the judge found appellant to be an M.D.S.O. who could benefit by care and treatment in a state hospital (§ 6316). He was granted a stay of execution on the commitment order (§ 6319). Pursuant to his request, a jury was ordered to try the issue of whether appellant was an M.D.S.O. (§ 6318). The jury found him to be an M.D.S.O. and he was committed to Atascadero State Hospital (§ 6321).

The evidence on the issue of whether appellant was an M.D.S.O. is close. Two psychiatrists testified that he fit the definition, and two testified that he did not.

Over appellant's objections, the court permitted the district attorney during the *voir dire* examination of the jurors, during the interrogation of psychiatric witnesses and in his argument to the jury to refer to the treatment appellant would be compelled to receive at a state institution if he were found to be an M.D.S.O. He referred to some persons who commit crimes because they are mentally disordered and need treatment. He stated the purpose of the proceedings is not to punish but to determine if treatment is indicated. During the examination of one of the psychiatrists, he developed that the psychiatrist had concluded that the appellant needed psychiatric help which he would get if found to be an M.D.S.O. and thereby lessen the likelihood of committing further sexual offenses. In his final argument he suggested that appellant should be found to be an M.D.S.O., otherwise appellant would be sent to jail and thereafter come out the same person. In parts of his argument he stated: "The fact that he responds sexually to children, something abnormal; that this is one manifestation of impulsive behavior, that he needs help, that he will benefit from treatment, and that he would not get treatment unless he is compelled to get treatment. [¶] . . . He recognizes this. I don't think that's a person— if you don't do anything for him psychiatrically and you just say let him go to jail, spend whatever time the judge says he should spend in jail. . . . The worst that can happen to Mr. Allen if he's treated criminally, as Dr. Badgley here would have us do, would be that he would go to jail, spend some time in jail, and when he came out he would be the same person with the same problem under greater stress because who knows what would happen to the marriage? . . . He needs help. The only way we can give him help is by this proceeding."

The judge also entered into the discussion. Among other things, he said: "If in fact you people determine that he is a mentally disordered sex offender, he'll receive medical treatment and the proceedings remain suspended until

such time as he is certified back from the hospital. At that time the criminal proceedings are resumed.

" . . . . . . . . . . . . . . . . . . .

"This is sort of a hybrid procedure which is quasi civil, but it's also quasi criminal. As an ordinary rule in a criminal case the jury is not to be concerned with the punishment. In this particular case—or in this type of case rather than this particular case—if the defendant is adjudicated to be a mentally disordered sex offender, he may be institutionalized for treatment."

M.D.S.O. "means any person who by reason of mental defect, disease, or disorder, is predisposed to the commission of sexual offenses to such a degree that he is dangerous to the health and safety of others." (§ 6300.)

The issue to be determined by the jury is precisely defined by section 6318. That section, in pertinent part, provides: ". . . or if it is a trial by jury the judge shall submit to the jury the question: Is the person a mentally disordered sex offender?" Sections 6319, 6320 and 6321 also refer to the issue to be determined by the jury as whether the person "is a mentally disordered sex offender."

The sole issue, therefore, for the jury's determination is clear. Nowhere do the statutory provisions refer to the question of whether the person could benefit by treatment in a state hospital as being one for the jury's determination, that question, among others, having been committed to the province of persons other than the jury.

The statutory scheme prescribes a ponderous labyrinthian procedure for the disposition of a person found to be an M.D.S.O. An M.D.S.O. may be moved back and forth, yo-yo-like, amongst the committing court, the state hospital (under the Department of Mental Hygiene), the criminal court and a state penal institution (under the Department of Corrections). The crucial determinations at the various decisional stages in this procedural maze are whether the M.D.S.O. could or could not benefit from treatment in a state hospital, whether he has been treated to such an extent that he will not benefit by further care or treatment in the hospital, and, in the latter case, is or is not a danger to the health and safety of others or whether he has not recovered and is still a danger to the health and safety of others. In each instance, under express statutory provisions, these questions are to be resolved by the judge with the assistance of psychiatrists, psychiatric reports and recommendations from the state hospital. (§§ 6316, 6319, 6325, 6326; *People* v. *Washington* (1969) 269 Cal.App.2d 246, 252, fn. 3 [74 Cal.Rptr. 823].)

█ Thus, as a matter of statutory language, wholly apart from considerations of relevancy or the misleading character of such evidence, it is improper for the jury to consider what disposition of the defendant may be made or what treatment he may receive.

A helpful analogy is to be found in juvenile court proceedings. In a series of recent cases, our Supreme Court has separated into isolated compartments the issue of fitness for juvenile court treatment (*Donald L.* v. *Superior Court* (1972) 7 Cal.3d 592, 596-598 [102 Cal.Rptr. 850, 498 P.2d 1098]), the issue of jurisdiction, and the dispositional issue (*In re Gladys R.* (1970) 1 Cal.3d 855, 860-862 [83 Cal.Rptr. 671, 464 P.2d 127]). In the latter case it was held that the court must consider evidence as to disposition, including the probation officer's social study of the minor, only after it has found that the minor is within its jurisdiction (§§ 701, 702, 706). The decision is grounded not only upon statutory interpretation, but upon basic principles of fairness. The desirable purpose is to guard against the adjudication of guilt being affected by inappropriate considerations dealing with disposition. In this frame of reference, the Supreme Court expressly approved the following statement in *In re Corey* (1968) 266 Cal.App.2d 295, 299 [72 Cal.Rptr. 115], and *In re Steven F.* (1969) 270 Cal.App.2d 603, 604 [75 Cal.Rptr. 887]: " 'Where the commission of a crime is alleged as the jurisdictional fact and the allegation is disputed, the court's error in [reviewing] the social study before the jurisdictional hearing goes so directly to the fairness of the hearing that the resulting adjudication is not saved by article VI, section 13, of the California Constitution.' " (*In re Gladys R., supra,* 1 Cal.3d 855, 861.)

We believe those observations are equally appropriate to and proscribe the intermingling before the jury of considerations dealing with whether a person is an M.D.S.O. and what disposition may be made or treatment received.

Reference to the rule in criminal proceedings is also informative. It is settled that in the trial of a criminal case the trier of fact is not to be concerned with the question of penalty, punishment or disposition in arriving at a verdict as to guilt or innocence.[2] (*People* v. *Moore* (1968) 257 Cal. App.2d 740, 750 [64 Cal.Rptr. 450]; *People* v. *Shannon* (1956) 147 Cal.App.2d 300, 306 [305 P.2d 101]; Witkin, Cal. Criminal Procedure (1963) § 456, subds. 1, 2, p. 459.)

In a criminal case, improper reference to penalty or punishment is gen-

---

[2]CALJIC No. 17.42 provides as follows: "In your deliberations the subject of penalty or punishment is not to be discussed or considered by you. That is a matter which must not in any way affect your verdict."

erally held reversible because such references are irrelevant, the jury is likely to be misled in determining the issue of guilt or innocence upon the basis of such improper considerations, and, if permitted, it would lead to involvement in collateral matters the probative value of which, if any, would be far outweighed by the prejudicial effect thereof. (Evid. Code, § 352.)

In *People* v. *Sorenson* (1964) 231 Cal.App.2d 88 [41 Cal.Rptr. 657], the issue before the jury on defendant's plea of insanity (Pen. Code, § 1026) was whether he was sane or insane at the time the offense was committed. The court reversed for a new trial on the insanity issue. The reversal was grounded upon remarks of the prosecutor in his closing argument, suggesting that if the jury found the defendant insane he would be confined to a hospital instead of a jail and " 'If the doctor feels he is not in one of these states of being manic depressive this particular minute, this turns him loose.' " (P. 91.) In reversing, the court observed at page 92: "Defendant's immediate or ultimate destination—whether state hospital, state prison or to be 'turned loose'—was a judgment which the law reposed in other hands than the jury's. The prosecutor's statement was a thinly disguised appeal to the jurors to abdicate their lawful role and to decide the issue of sanity in terms of their own opinion that imprisonment, not hospitalization, was defendant's proper fate. In effect, the district attorney was urging the jury to usurp functions reposed by statute in other hands. The statement was an appeal to prejudice, an attempt to arouse aversion toward a verdict which might 'turn him loose' to victimize innocent people with more bad checks. Finally, the argument misstated the law, telling the jury that after defendant's commitment to a state hospital, 'the doctor' could release him. Penal Code sections 1026 and 1026a, to the contrary, prevent the release of a defendant without a judicial hearing and a finding of restoration to sanity.

"Similar prosecution arguments in the course of insanity trials have been categorized as misconduct. [Citations.]" (Fn. omitted.)

These observations are equally applicable to M.D.S.O. proceedings, although they are normally referred to as civil rather than criminal in nature. (§ 6321; *In re Bevill* (1968) 68 Cal.2d 854, 858 [69 Cal.Rptr. 599, 442 P.2d 679].) But a person cannot be deprived of important rights by simplistic labels (*In re Gault* (1967) 387 U.S. 1 [18 L.Ed.2d 527, 87 S.Ct. 1428]), particularly when the proceedings, as here, have many of the characteristics of a criminal trial, e.g., it originates in a criminal prosecution, and it carries with it the right to counsel, presence at hearing, bail, jury trial, and free appeal transcript. (*Gross* v. *Superior Court* (1954) 42 Cal.2d 816, 821

[270 P.2d 1025].) In *People* v. *Rancier* (1966) 240 Cal.App.2d 579, 582 [49 Cal.Rptr. 876], the court stated: " 'The main purpose of the act is to protect society against the activities of sexual psychopaths. The secondary purpose is to rehabilitate. . . .' " And if the individual is found to be an M.D.S.O. who could not benefit from treatment, he may end up in a state penal institution for years or for even a lifetime. (*In re Kramer* (1967) 257 Cal.App.2d 287 [64 Cal.Rptr. 686]; *People* v. *Rancier, supra*, 240 Cal.App.2d 579; Grilli, *The MDSO—Uncivil Civil Commitment* (1970) 11 Santa Clara Law. 169.) Thus, in many respects, and at least insofar as the person involved is concerned, the proceedings are penal in nature and effect. While it may not be punishment in the historical sense, it is punishment nonetheless as to the person confined.

■ We are of the opinion that the sound principles which prohibit comment or evidence on punishment or penalty to be considered by a jury on the issue of guilt in a criminal case are, by analogy, applicable to M.D.S.O. proceedings.

Permitting the jury to consider the alleged speculative benefits of involuntary treatment is to allow them to believe they are doing the individual a favor by helping him solve his problem rather than punishing him criminally. The statements and remarks heard by the jury suggest that if appellant were found to be an M.D.S.O. he would receive treatment which would be beneficial and curative, and if he were not so found he would serve a jail sentence and again be turned loose on society. Aside from the evidence being irrelevant, the conclusions are misleading.

The treatment is not necessarily salutary. Moreover, if he is found to be an M.D.S.O. but not amenable to treatment, he still could be sentenced by the criminal court, serve his term, and then be turned loose, or he may be confined for what may amount to a life sentence in a penal institution pursuant to a commitment for an indefinite term.

Moreover, should the subject of disposition and treatment be permitted to be opened up by the district attorney, the entire spectrum of possible dispositions could properly be explored by the defendant, which, considering the complex nature of the statutory provisions, could involve the jury in utterly perplexing collateral and time-consuming efforts not appropriate to the determination of the central issue.

The judgment of commitment is reversed and the cause remanded for a new trial.

Gargano, J., and Franson, J., concurred.

A petition for a rehearing was denied February 2, 1973, and the opinion was modified to read as printed above. Appellant's petition for a hearing by the Supreme Court was denied March 8, 1973.