28 Cal.3d 587 (1980)
620 P.2d 163
169 Cal. Rptr. 713
In re WINNETKA V., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent,
v.
WINNETKA V., Defendant and Appellant. In re WINNETKA V., a Person Coming Under the Juvenile Court Law. WINNETKA V., Plaintiff and Appellant,
v.
CALIFORNIA YOUTH AUTHORITY, Defendant and Respondent.
Docket No. Crim. 21142.
Supreme Court of California.
December 18, 1980.
*589 COUNSEL
Quin Denvir, State Public Defender, under appointment by the Court of Appeal, Charles M. Sevilla and Jonathan B. Steiner, Chief Assistant State Public Defenders, for Plaintiff and Appellant and Defendant and Appellant.
George Deukmejian, Attorney General, Jack R. Winkler and Robert H. Philibosian, Chief Assistant Attorneys General, S. Clark Moore, Assistant Attorney General, Shunji Asari, Carol Wendelin Pollack, Jack T. Kerry and Sharlene A. Honnaka, Deputy Attorneys General, for Plaintiff and Respondent.
No appearance for Defendant and Respondent.
OPINION
NEWMAN, J.
These are consolidated appeals from orders declaring the minor to be a ward of the court (Welf. & Inst. Code, § 602)[1] and *590 committing her to the California Youth Authority (CYA), and from a subsequent order denying her petition to modify that commitment order (§ 778).
The wardship was predicated on findings that she committed acts of attempted robbery and assault with a deadly weapon. On this appeal she does not question the sufficiency of the evidence to support those findings; nor does she complain of the conduct of the adjudication (jurisdictional) hearing. Accordingly, for present purposes it is enough to note that she was engaged in shoplifting in a clothing store when the owner became suspicious and investigated. She then attempted unsuccessfully to rob him with an empty handgun and, in the ensuing struggle, struck him on the head with the gun.
On March 29, 1978, a disposition hearing was held before a juvenile court referee. He noted that he had read and considered the probation officer's report recommending commitment to the CYA. He declined, however, to adopt that disposition. After weighing the seriousness of the offenses against a number of mitigating circumstances[2] he found that CYA commitment would be inappropriate and unwarranted. He ordered that the minor instead be taken from her parents and put in the custody of the probation department for "suitable placement"; i.e., in a county-operated juvenile facility rather than the CYA. There remained, however, some question as to whether a suitable placement could be found since the minor was believed at the time to be pregnant.
On April 11, 1978, Judge Smith, the presiding judge of the juvenile department of the superior court, acting assertedly on his own motion, ordered a rehearing on the referee's disposition. The matter was assigned to another superior court judge; a second disposition hearing was held; and the court considered evidence and arguments substantially similar to those previously presented to the referee. It was stipulated, however, that the minor was not pregnant; and there was undisputed testimony that Camp Holton, a juvenile facility operated by the county probation department, was likely to accept her. Nonetheless the court found that a local placement would not be adequate and therefore committed her to the CYA.
*591 She does not contend that the evidence at the second hearing was insufficient. Nor does she claim that Judge Smith lacked authority to order the rehearing. Rather she complains that the process via which rehearing was ordered violated her statutory and constitutional rights. The contentions focus on the fact that the judge's order came after the district attorney's office sent a letter urging that there be a rehearing.
(1) The first contention is that the letter was improper because statutes prohibit the People from seeking rehearing. The argument proceeds as follows: The Welfare and Institutions Code permits rehearing of a referee's disposition only on (1) application by the minor or the parent or guardian (§ 252), or (2) a juvenile judge's "own motion" (§ 253).[3] The letter here was an application for rehearing by the People; yet the right to apply is not granted the People by statute and so does not exist. (Cf., Pen. Code, § 1238; People v. Drake (1977) 19 Cal.3d 749, 754 [139 Cal. Rptr. 720, 566 P.2d 622].) The order to rehear was not on the court's own motion because it was prompted by the letter. Hence, rehearing was granted improperly.
Section 252 does confer a right to "apply ... for a rehearing" only on the minor or one acting on behalf of the minor. We see nothing in section 253, though, that prohibits the court from receiving outside communications before deciding to order rehearing on its own motion. (Cf., Pen. Code, § 1204; In re Calhoun (1976) 17 Cal.3d 75, 83-84 [130 Cal. Rptr. 139, 549 P.2d 1235].)
*592 Regular procedures by which referees' decisions are screened for "own motion" rehearings are desirable. However, the law neither compels those procedures nor makes them exclusive means of deciding to rehear in the absence of a minor's application.
Indeed the 1961 revision of the law, seeking to reduce workload, eliminated the requirement that all referees' decisions be submitted to a judge for approval. Provisions for discretionary rehearing on the minor's or the court's motion, similar to those now in effect, were substituted; and no limitation was placed on considerations that might lead the judge to order rehearing. (In re Bradley (1968) 258 Cal. App.2d 253, 261 [65 Cal. Rptr. 570]; see Stats. 1937, ch. 369, § 576, p. 1022; Stats. 1961, ch. 1616, § 2, pp. 3466-3467.)
The workloads of the juvenile courts lead us to doubt that the Legislature intended to confine "own motion" rehearings to cases the judge has investigated on his own initiative. The impetus to action sometimes will come from others  the referee or other interested observers such as the district attorney. The words and aims of section 253 do not support an inference that letters to the judge from a prosecutor or anyone else are proscribed.
It is incorrect here to assume that the district attorney invoked a right to "apply ... for a rehearing." We agree that the People have no such right, but there is no indication that the trial court thought otherwise.[4]
When on a minor's behalf rehearing is sought the application must be considered. It cannot be denied without review of the transcript and if not acted on within the specified time is deemed granted. (§ 252; see In re Edgar M. (1975) 14 Cal.3d 727, 737 [122 Cal. Rptr. 574, 537 P.2d 406].) But a mere communication from the district attorney or other interested person has no official status, and the court is free to reject it informally. That the letter here may have influenced the judge does not make it a nonstatutory "application for rehearing."[5]
*593 We therefore conclude that the order for rehearing was not improper on the ground that it was preceded and may have been prompted by a letter from the district attorney's office.
(2a) It is next argued that the minor was denied due process because the judge ordered rehearing without giving her notice and an opportunity to respond to the letter.[6]
In Donald L., supra, 7 Cal.3d 592, a referee found the minor fit for treatment as a juvenile. It was contended that an "own motion" rehearing of the referee's finding actually had been granted at the informal, ex parte request of the district attorney. That impropriety, it was urged, invalidated the judge's subsequent determination of unfitness. This court did not decide the issue because the factual basis for the minor's claim seemed unclear. The presiding judge of the juvenile court was criticized, however, for his "stated policy" of acting on informal requests for rehearing "without giving the parties an opportunity to be heard...." Indeed, said Donald L., "[s]uch action ... may well be of doubtful constitutionality" because significant steps in the juvenile court process cannot be taken without affording the minor notice and opportunity for hearing. (P. 599, citing In re Gault (1967) 387 U.S. 1, 30 [18 L.Ed.2d 527, 547-548, 87 S.Ct. 1428], and Kent v. United States (1966) 383 U.S. 541, 562 [16 L.Ed.2d 84, 97-98, 86 S.Ct. 1045].)
*594 We now endorse the rule that Donald L. suggests. A decision to order a rehearing not sought by the minor is a step affecting his substantial interests. It voids a favorable referee's decision already won, which would otherwise become final and binding. It subjects the minor to de novo reconsideration of the disposition and creates the risk of a harsher decision affecting his liberty. It is true that the law prescribes no limitations on the judge's discretion to order rehearing sua sponte. Nonetheless, due process means that decisions to deprive individuals of substantial interests should not be made arbitrarily or by unfair procedures. (People v. Ramirez (1979) 25 Cal.3d 260, 267-268 [158 Cal. Rptr. 316, 599 P.2d 622]; see Cal. Const., art. I, §§ 7, 15.)
Communications from the People made without formal opportunity for response by the minor raise the danger that inaccuracies may affect the decision to rehear.[7] The right to respond enables the minor to point up flaws in the prosecutor's arguments, emphasize favorable portions of the record, and suggest why discretion should be exercised in favor of leaving the referee's decision untouched. (Ramirez, supra, at pp. 273-274; cf., In re Calhoun, supra, 17 Cal.3d 75, 84; In re Minnis (1972) 7 Cal.3d 639, 650 [102 Cal. Rptr. 749, 498 P.2d 997].) Recognition of the right promotes an appearance of fairness and supports the "important dignitary values that underly due process...." (Ramirez, supra, at p. 275.)
The state, on the other hand, has no legitimate interest in denying the minor a fair opportunity to respond to a request that the court order re *595 hearing on its own motion. The state's concern is to find the disposition best suited to the minor's rehabilitation and welfare, insofar as consistent with public safety (§ 202). One-sided attacks on the referee's conclusions increase the likelihood that accurate decisionmaking will not occur.
We do not prescribe a full or formal hearing. The judge's decision whether to rehear is largely focused on a record already developed. It does not depend on resolution of facts but inherently is subjective. (Ramirez, supra, at pp. 273-276.) It does not decide the minor's fate (unless rehearing is denied) but is preliminary to reconsideration of that issue. Formality at this stage could add substantial burdens to the rehearing process but would not decrease appreciably the risk of an erroneous disposition.
We think the minor's and the state's interests are best resolved, pending possible legislative study, by procedures parallel to those prescribed in Ramirez for persons facing exclusion from the state's narcotics-treatment program. When a juvenile judge has received an informal request for rehearing of a referee's decision not challenged by the minor, he may not on his own motion order rehearing until the minor has been notified of the request, supplied with a copy (including exhibits and other attachments), given access to all materials it brings to the court's attention other than those already in the record, advised he may reply in writing, and accorded a reasonable opportunity to do so.
(3) We next consider what effect the denial of prerehearing rights in this case should have on its outcome. The People claim harmless error, relying on Donald L., supra. There, with no supporting citation or discussion, the court stated that, even if rehearing had been ordered on the basis of an improper, ex parte request from the district attorney, "we can find no prejudice to the minor since the issue of fitness was fully and fairly reheard de novo by a judge other than the one who ordered the rehearing." (7 Cal.3d at p. 599.)
Whether or not the referee's ruling was fully and fairly reheard de novo by another judge, however, two facts seem inescapable: (1) in all cases in which the minor has complained of the matter on review the result of the second hearing was less favorable to him than the first; and *596 (2) in each case that second hearing would not even have been held had the juvenile judge not ordered it.
Might a response from the minor have affected the decision to rehear this matter? The referee's discretionary disposition, carefully explained on the record, appears well within reason. But in important respects the letter from the office of the district attorney misstated both the evidence and the referee's views. (See fn. 7, ante.) Neither the transcript nor rebuttal from the minor was available to contradict the letter's suggestion that a violent and sophisticated criminal in effect had been turned loose on the community. Sua sponte the judge ordered rehearing within a week after the letter was sent. Though he gave no reasons, it seems fair to infer that the letter  inaccurate and unchallenged  had an intended effect.
Prejudice thus appears; and the appropriate remedy now is to hold the rehearing order void, invalidate the disposition that resulted from the rehearing, and reinstate the referee's decision.
(2b) Moreover, we read the safeguards prescribed in this opinion into section 253 to save it from constitutional infirmity. (In re Calhoun, supra, 17 Cal.3d at pp. 84-85; In re Edgar M., supra, 14 Cal.3d 727, 736-737.) Since the rehearing order did not comply with section 253, so interpreted, it is of no effect. Accordingly, because no valid, timely order for rehearing was made the referee's decision became final for all purposes 20 days after its issuance, as the statutes provide. (§§ 252, 253; see Calhoun, supra, at p. 85.) Insofar as language in Donald L., supra, 7 Cal.3d 592, seems inconsistent it is disapproved.[8]
In the companion appeal the minor seeks review of a subsequent order of the juvenile court denying her petition to modify its CYA commitment order because of an asserted change of circumstances. (§ 778.) Because her sole complaint is that the court did not accord a hearing before denying that petition, the second appeal will be dismissed as moot.
The order sustaining the petition and declaring the minor a ward of the court is affirmed. The order committing the minor to the California *597 Youth Authority is reversed. The appeal from the order denying the minor's petition to modify the order of commitment is dismissed as moot. The cause is remanded for proceedings consistent with this opinion.
Tobriner, J., Clark, J., and Richardson, J., concurred.
MOSK, J.
I dissent.
The majority do violence to an unambiguous legislative plan for the orderly disposition of juvenile matters, they condone a bizarre procedure that includes approval of an improper ex parte communication to a judge where none is permitted by law, and then having wreaked havoc on existing statutes, they invent yet another elaborate procedural mechanism to avoid constitutional infirmity. This is indeed error compounded, and for no purpose remotely associated with either justice or judicial efficiency. It manifestly is not error "attributed to one of those failings which lean to virtue's side." (The Washington University v. Rouse (1869) 75 U.S. (8 Wall.) 439, 443 [19 L.Ed. 498, 500] (dis. opn. of Miller, J.).)

I
The Legislature has prescribed the procedure for requesting rehearing of a ruling by a juvenile court referee in Welfare and Institutions Code section 252. That section declares in relevant part that "At any time prior to the expiration of 10 days after service of a written copy of the order and findings of a referee, a minor or his parent or guardian may apply to the juvenile court for a rehearing." (Italics added.) No language could be plainer. Moreover, neither this section nor any other provision of law in this state authorizes the prosecution to seek such a rehearing. The meaning of such silence is equally plain: under the rule of construction expressio unius est exclusio alterius (see, e.g., Southern Cal. Gas. Co. v. Public Utilities Com. (1979) 24 Cal.3d 653, 659 [156 Cal. Rptr. 733, 596 P.2d 1149]; People v. Nichols (1970) 3 Cal.3d 150, 161 [89 Cal. Rptr. 721, 474 P.2d 673]), a conclusion is inescapable that the omission is deliberate and the Legislature did not intend that the prosecution possess such a right.[1]
*598 Despite this clear indication of legislative intent, the People in effect applied for a rehearing in the case at bar. The majority err in denying that "the district attorney invoked a right to `apply ... for a rehearing.'" (Ante, p. 592.) That is exactly what the prosecution announced it would do at the conclusion of the first disposition hearing, when the following colloquy took place between the referee and the deputy district attorney:
"MR. LOWEN: The People think the court has made a mistake, and in fact, we will be asking for a rehearing in the matter.
"THE COURT: A rehearing as to the disposition?
"MR. LOWEN: Yes.
"THE COURT: That is your prerogative."
As I have just shown, however, the People did not have the "prerogative" of "asking for a rehearing" in this matter. Yet that is precisely what happened. On April 5, 1978  i.e., within the 10-day period prescribed by section 252 during which the minor or his parent or guardian may seek a rehearing  the District Attorney of Los Angeles, acting through his head deputy, juvenile division, wrote a letter on official stationery to Judge Smith of the Los Angeles Superior Court, asserting that "The District Attorney appearing as counsel for the People in the above case requests that the Court exercise its discretion pursuant to Welfare and Institutions Code section 253 and grant a rehearing on a disposition heard March 29, 1978 in Dept. 205 before Referee Howard Price."
In the balance of the letter the district attorney presented his case for a rehearing. The majority concede, as they must, that the letter was written "in a tone of advocacy" (ante, p. 594, fn. 7) and "misstated both the evidence and the referee's views" in important respects. (Ante, p. 596.) First, the letter purported to summarize both the evidence introduced at the adjudication hearing and the grounds upon which the referee acted at the disposition hearing, even though the writer of the letter had not been present at either proceeding. As to adjudication, the letter portrayed the minor as a traditional armed robber and omitted to *599 mention the evidence relied on by the referee tending to show that the minor's primary intent had been simply to shoplift. As to disposition, the letter itemized in detail the probation officer's reasons for recommending commitment to the California Youth Authority (CYA), but gave only two reasons for the referee's order of suitable placement, viz., (1) because it was the first time the minor had been declared a ward, and (2) because the referee assertedly "felt" that case law prohibited a CYA commitment when a minor had not previously been supervised at the local level. This recital was both incomplete and misleading: it omitted to state the several additional grounds on which the referee based his disposition,[2] and it exaggerated the significance of certain remarks by the referee on the relevant case law.[3]
On another factual assertion  particularly damaging to the minor  the letter was flatly wrong: it claimed the referee "noted" that the minor had previously been arrested, inter alia, for the crime of murder. A reading of the transcript demonstrates that no such statement was ever made at the disposition hearing, by the referee or anyone else. And a glance at the probation officer's report is enough to show that in making such a claim the district attorney once again grossly exaggerated the record.[4]
The letter-writer then proceeded to argue the case, again as an advocate, stating that "The District Attorney contends that the Referee's ruling placing the minor in suitable placement is unwarranted by the facts and existing case law." The ensuing argument was predicated in part, however, on the erroneous belief that the minor was pregnant. It also asserted that "suitable placement" meant an "open" facility that would "permit the minor to roam freely in the community"; again the record is to the contrary.[5] Finally, the letter described the minor as *600 "very mature and sophisticated," although the referee  who observed the minor at the hearing while the letter-writer did not  characterized her offense as "very stupid" and repeatedly found her to be "unsophisticated."
Section 252 prescribes that a petition for rehearing shall contain "a statement of the reasons such rehearing is requested." It is undeniable that the letter of the district attorney in this case contained just such a statement, and was sent pursuant to his declared intent of "asking for a rehearing." In short, although the letter purported to request the judge to exercise his discretion under section 253, in everything but name it amounted to an application for rehearing under section 252. It is wilfully naive for the majority to pretend otherwise. Indeed, the majority even concede that the scheme was successful: "Though [Judge Smith] gave no reasons, it seems fair to infer that the letter  inaccurate and unchallenged  had an intended effect." (Ante, p. 596.) Such a conclusion is inevitable, for the judge acted prior to receiving a transcript of the proceedings before the referee.
The majority admit (ante, p. 591) that section 252 confers the right to apply for a rehearing "only on the minor" or his parent or guardian, and they "agree that the People have no such right" (ante, p. 592). What then is their authority? They turn to section 253,[6] and build their entire holding on the slender reed that "We see nothing in section 253 ... that prohibits the court from receiving outside communications" before ordering a rehearing on its own motion. (Ante, p. 591.) But even if such an "outside communication" were proper when made by a truly disinterested person  a point I discuss next  none is now before us. Here we are faced rather with an "inside" communication by the chief protagonist in the case, the district attorney; and as shown above, the document is nothing less than a de facto petition for rehearing. To hold such a communication impliedly permissible under section 253 is to *601 frustrate the legislative will so plainly expressed in section 252, i.e., that the minor but not the People have the right to petition for rehearing.
For different but equally compelling reasons the result should be the same even if the "outside communication" had come from someone other than the district attorney. The majority's condonation of unsolicited letters to a judge from "other interested observers" or "anyone else" (ante, p. 592) adds an unprecedented and dangerous dimension to the judicial process. If such communications to a judge concerning a pending matter come from an attorney, they violate rule 7-108(B), Rules of Professional Conduct of the State Bar of California.[7] And whether or not the "anyone else" is an attorney, the judge is prohibited from considering his "ex parte or other communications concerning a pending or impending proceeding" under canon 3A(4), California Code of Judicial Conduct. I can only conclude the majority have rewritten the rules that traditionally have governed our adversary judicial system. Henceforth judges may be persuaded to a conclusion not only in open court or by appropriate written briefs served on all parties, but also by unsolicited letters from casual observers or "anyone else." The potential for evil in this singular method of procedure should be disturbing to all members of the bench and bar devoted to the orderly resolution of disputes.

II
Because the order granting a rehearing was invalid as a matter of statutory law, I find superfluous  and do not join in  the majority's discussion of its claimed constitutional defects. I note in passing, however, that the elaborate panoply of due process rights decreed by the majority on this point further supports the view I express in Part I of this opinion. The majority hold that when a judge receives "an informal request for rehearing" he may not grant it "on his own motion" until the minor has been (1) notified of the request, (2) supplied with a copy thereof and all attachments thereto, (3) given access to all materials dehors the record that it calls to the judge's attention, (4) advised that he may reply in writing, and (5) accorded a reasonable opportunity to do so. (Ante, p. 595.) Surely any communication that releases such a torrent of procedural formalities should be recognized for what it is: the *602 functional equivalent of a formal application for rehearing by the People, an application for which no authority exists.
Bird, C.J., and Manuel, J., concurred.
NOTES
[1] All statutory references are to the Welfare and Institutions Code.
[2] The referee stressed that the incident was not so much a planned, armed robbery as an aborted shoplifting in which the minor was caught and reacted to the situation. There was no documented history of violence; this was the first time she had been declared a ward; and she had never before been placed on supervision or probation at the local level.
[3] Section 252 provides: "At any time prior to the expiration of 10 days after service of a written copy of the order and findings of a referee, a minor or his parent or guardian may apply to the juvenile court for a rehearing. Such application may be directed to all or to any specified part of the order or findings, and shall contain a statement of the reasons such rehearing is requested. If all of the proceedings before the referee have been taken down by an official reporter, the judge of the juvenile court may, after reading the transcript of such proceedings, grant or deny such application. If proceedings before the referee have not been taken down by an official reporter, such application shall be granted as of right. If an application for rehearing is not granted, denied or extended within 20 days following the date of its receipt, it shall be deemed granted. However, the court, for good cause, may extend such period beyond 20 days, but not in any event beyond 45 days, following the date of receipt of the application, at which time the application for rehearing shall be deemed granted unless it is denied within such period. All decisions to grant or deny the application, or to extend the period, shall be expressly made in a written minute order with copies provided to the minor or his parent or guardian, and to the attorneys of record."

Section 253 provides: "A judge of the juvenile court may, on his own motion made within 20 judicial days of the hearing before a referee, order a rehearing of any matter heard before a referee."
[4] Before the referee the deputy districy attorney declared, "The People ... will be asking for a rehearing in this matter." The subsequent letter requested "that the court exercise its discretion pursuant to ... Section 253 and grant a rehearing...." Nothing implies that the prosecutor or the court thought the People had rights similar to those accorded the minor in section 252.
[5] The statutes' failure to give the People a right to apply for rehearing does not violate the requirement that referees perform only "subordinate judicial duties." (Cal. Const., art. VI, § 22.) A referee's decision is advisory only and on timely application must be reconsidered by a judge. (In re Edgar M., supra, 14 Cal.3d 727, 735-736.) However, the Legislature has expressed a policy that the People not make such an application but instead accept the referee's decision unless a judge sua sponte orders rehearing. Jesse W. v. Superior Court (1978) 20 Cal.3d 893 [145 Cal. Rptr. 1, 576 P.2d 963] (Jesse W. I), which held that a referee's decision to acquit contravenes the subordinate-duties clause because double-jeopardy principles prevent its being reheard, is distinguishable. (P. 899, fn. 5; see also Jesse W. v. Superior Court (1979) 26 Cal.3d 41, 47, fn. 5 [160 Cal. Rptr. 700, 603 P.2d 1296] (Jesse W. II); In re Perrone C. (1979) 26 Cal.3d 49, 55-56 [160 Cal. Rptr. 704, 603 P.2d 1300].)
[6] Donald L. v. Superior Court (1972) 7 Cal.3d 592, 599 [102 Cal. Rptr. 850, 498 P.2d 1098], states that "nothing in the Juvenile Court Law supports the ... policy of acting upon informal requests for rehearing without affording the parties an opportunity to be heard...." The letter here, dated April 5, 1978, declared that after the court had reviewed the file the district attorney "would appreciate the opportunity to appear ... along with opposing counsel when and if the Court deems it necessary." (Italics added.)

The record copy indicates that a carbon was sent to the public defender's office. (See rule 7-108(B), Rules Prof. Conduct of State Bar; cf. In re Calhoun, supra, 17 Cal.3d 75, 79; In re Jonathan S. (1979) 88 Cal. App.3d 468, 471 [151 Cal. Rptr. 810].) Rehearing was ordered on April 11, and there is no contention that the minor had a realistic opportunity to respond.
[7] The district attorney letter, written in a tone of advocacy by a deputy other than the one who represented the People at the disposition hearing, contained several inaccuracies. It portrayed the minor as a sophisticated armed robber with a prior murder arrest "noted" by the referee. It suggested that the referee rejected CYA placement only because he thought it legally precluded.

The referee had emphasized that the minor did not intend an armed robbery but simply reacted when her shoplifting was discovered. The "murder" incident appears only in the probation officer's report where the "minor state[d]" that, while in custody on a marijuana charge, she was accused of murder by the prime suspect in the killing. She was never prosecuted on either count. The referee gave no credence to the incident and stressed the absence of violence in the minor's past. He made clear that he rejected CYA not only on legal grounds but on the facts, including the minor's lack of sophistication and her nonviolent history.
The letter also erred in stating that the minor was pregnant (suggesting difficulty in non-CYA placement), that the referee had ordered placement in an open facility (noting the seriousness of the offense, he emphatically had directed closed placement), and that he knew no community agency would take her (juvenile officials had conceded that placements might be available if the minor were not pregnant or were deemed nonviolent).
[8] In view of this disposition, we do not reach the minor's additional, belated argument that rehearing of a referee's disposition not challenged by the minor violates the double jeopardy clause.
[1] An analogy may be drawn to Penal Code section 1238, which lists eight categories of judgments or orders from which the People are entitled to appeal in adult criminal cases. It is settled that the list is exclusive and the prosecution has no right to appeal from any judgment or order not specified in the statute. (See, e.g., People v. Drake (1977) 19 Cal.3d 749, 754 [139 Cal. Rptr. 720, 566 P.2d 622]; People v. Superior Court (Howard) (1968) 69 Cal.2d 491, 497-498 [72 Cal. Rptr. 330, 446 P.2d 138]; People v. Valenti (1957) 49 Cal.2d 199, 204-205 [316 P.2d 633], and cases cited.)
[2] The referee stressed that the incident was merely an aborted shoplifting in which the minor was caught and reacted, that she had no history of violence, that this was the first time she had been declared a ward, that she had never been placed on probation before.
[3] Although the referee at first expressed some concern about his authority to order a CYA commitment of a first offender, he concluded rather that any magistrate had the power to do so upon making the appropriate record and that less drastic alternatives were not mandatory but merely preferred.
[4] The minor had never been arrested for murder. At age 16 she had once been arrested for possession of marijuana, but the district attorney declined to prosecute and the case was closed.
[5] Thus at the first disposition hearing the referee specifically directed the probation department to place the minor in a "closed" setting, adding "And I emphasize `closed setting.' I do not think it suitable to have her back in the community. She needs to be removed from the community and to be supervised in a closed setting at something less than Youth Authority." The referee then sought to implement this directive by imposing, as a condition of placement, a specific prohibition against the minor's leaving such facility without permission. Also contrary to the district attorney's assertion is the fact that at the second disposition hearing an intake officer at the proposed "suitable placement" operated by the county probation department (Camp Holton) testified that the facility was not an "open" but a "closed" setting.
[6] Section 253 provides: "A judge of the juvenile court may, on his own motion made within 20 judicial days of the hearing before a referee, order a rehearing of any matter heard before a referee." (Italics added.)
[7] "A member of the State Bar shall not directly or indirectly in the absence of opposing counsel, communicate with or argue to a judge or judicial officer, upon the merits of a contested matter pending before such judge or judicial officer, except in open court; ..."