[No. G003171. Fourth Dist., Div. Three. Dec. 2, 1986.]

THE PEOPLE, Plaintiff and Respondent, v.
JOHN DAVID KIPP, Defendant and Appellant.

**COUNSEL**

Cynthia K. Cohan, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, and Jesus Rodriguez, Deputy Attorney General, for Plaintiff and Respondent.

**OPINION**

**CROSBY, Acting P. J.**—In a trial to determine whether an inmate of a state hospital has regained his sanity, is it proper to advise the jury a finding that he no longer represents a substantial danger to others will result in his being freed from court supervision and any requirement of mandatory treatment in the future? *No*.

I

John Kipp was found not guilty by reason of insanity of the arson of his parents' home, and the maximum term of hospitalization was fixed at six years. After two years he was released to outpatient status, but he was returned to the hospital again several months later.

Approximately seven months before his commitment was scheduled to terminate, the district attorney petitioned to extend the commitment (Pen. Code, § 1026.5, subd. (b)). The matter was tried to a jury, and a number of professionals involved in his treatment testified to Kipp's continuing

mental problems. In addition, two court-appointed psychologists concluded he posed a substantial danger to others if released from the hospital.

Kipp testified as the sole witness for the defense. He acknowledged suffering a nervous breakdown before the 1979 arson incident. He was currently on medication to control his emotions and to help him sleep. He agreed with the psychologist who testified to the hostility he continued to feel towards his mother. He admitted a drug and alcohol abuse problem and stated he was involved in Patton State Hospital's Alcoholics Anonymous and Narcotics Anonymous programs. He desired to be released from the hospital and to contact a local mental health agency to secure a board and care residency where he could continue group therapy and receive job training. Demons, he said, used to ridicule him and encourage him to commit criminal offenses, but he had not heard from them for several months before trial.

The jury found Kipp was still suffering from a mental disease and posed a substantial danger to others. Accordingly, his commitment was extended (Pen. Code, § 1026.5, subd. (b)(6)).

## II

■ The sole issue on appeal is whether the court prejudicially erred in giving the prosecution's special instruction No. 2. It reads, "All persons who are found by a jury to no longer be a danger to themselves or other[s] are released from the care and custody of the state hospital system and are no longer subject to any mandatory treatment or court supervision as a result of their commitment on the original finding of insanity. This applies to Mr. Kipp as of Nov. 8, 1985." Kipp argues this instruction violates the public policy of this state prohibiting jurors from considering the subject of penalty or punishment in arriving at a verdict.

He relies primarily on *People v. Moore* (1985) 166 Cal.App.3d 540 [211 Cal.Rptr. 856]. *Moore* involved the trial of a not-guilty-by-reason-of-insanity defense. There, the Court of Appeal reversed a judgment finding the defendant sane because the trial court erred in refusing a defense instruction describing the range of institutional options should the criminal defendant be found to have been insane when the offenses were committed. The court observed, "whenever requested by the *defense* or by the *jury*, the trial judge should give an instruction [outlining the general scheme of California's mental health laws relating to a defendant insane at the time of his crimes]. We likewise hold barring unusual circumstances *no other allusion should be made to the defendant's postverdict disposition.*" (*Id.*, at p. 556, italics added; see also *People v. Dennis* (1985) 169 Cal.App.3d 1135, 1139-1141

[215 Cal.Rptr. 750].) The Attorney General, while acknowledging *Moore* and despite its clear language to the contrary emphasized above, argues its reasoning should nonetheless be expanded to permit postverdict disposition instructions when requested by the *prosecution* even where, as here, the defense objects.

We disagree. There can be no purpose to advising a jury of the consequences of its decision under the present circumstances, except to improperly deflect its attention from the issue of the defendant's current mental condition to the possible effect of a decision to find him presently sane, i.e., "to stack the deck" against the defendant. (*People* v. *Ramos* (1984) 37 Cal.3d 136, 157-158 [207 Cal.Rptr. 800, 689 P.2d 430].) The instructions approved in *Moore,* on the other hand, are designed to direct the jury's focus to the issue to be decided and away from an improper consideration of the consequences of its verdict by assuring the jury that a finding of not guilty by reason of insanity will not necessarily result in the release of the defendant. The instruction given here impermissibly accomplishes the reverse. It blatantly suggests the jury should weigh the potential effect of a sanity finding on the same scale used to make the determination itself. The instruction, while appearing fair because it superficially gives the prosecution something similar to the right extended to the defendant in *Moore,* is exactly the opposite. It should not have been given here and should not be given in the future.

Additionally, the error was somewhat exacerbated by an instruction requested by both sides at trial—and which is not attacked on appeal. That instruction, a modified version of CALJIC No. 2.90, reads, "A respondent in an extension proceeding is presumed to be suitable for release until the contrary is proved and in case of a reasonable doubt whether his need for an extended commitment is satisfactorily shown, he is entitled to a verdict of release. This presumption places upon the State the burden of proving its case beyond a reasonable doubt . . . ." The balance of the instruction defined reasonable doubt and concluded Kipp was to be released if the jurors "cannot say they feel an abiding conviction, to a moral certainty, that Mr. Kipp represents a substantial danger of physical harm to others by reason of a mental disease, defect or disorder." The issue was properly phrased only in the last portion of the instruction. The jury should not have been directed to consider whether Kipp ought to be released, but only whether "by reason of a mental disease, defect, or disorder [he] represents a substantial danger of physical harm to others." (Pen. Code, § 1026.5, subd. (b)(1).)

### III

Nonetheless, although these instructions were erroneous, we are persuaded Kipp could not have been prejudiced. The prosecution's evidence

that he still suffered from severe mental disorders and was not yet ready for release form the hospital was consistent, overwhelming, essentially unrebutted, and even found support in Kipp's own testimony. We must conclude, consequently, that the spurious special instruction and the partially "loaded" reasonable doubt instruction could not have harmed Kipp in light of the strength of this evidence. It is not reasonably probable, or even reasonably possible, that he could have obtained a more favorable result in the absence of these errors. (*People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243].)

Judgment affirmed.

Wallin, J., and Sonenshine, J., concurred.