[Nos. F028684, F031054. Fifth Dist. Oct. 25, 1999.]

THE PEOPLE, Plaintiff and Respondent, v.
JONATHAN MICHAEL RAINS, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts I, III and IV of the discussion.

**COUNSEL**

Athena Shudde, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Robert R. Anderson, Assistant Attorney General,

Robert P. Whitlock and Leah Ann Alcazar, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

CORNELL, J.*—A jury found appellant Jonathan Michael Rains to be a sexually violent predator within the meaning of California's Sexually Violent Predators Act (SVPA) (Welf. & Ins. Code, § 6600 et seq.). On the day the jury reached its verdict (April 22, 1997), the court ordered appellant committed to Atascadero State Hospital. The court further ordered that the commitment expire on September 20, 1998. The court's written order, filed on April 23, 1997, described the commitment as "a two (2) year commitment" and as having been imposed pursuant to the provisions "of section 6604 of the Welfare and Institutions Code[.]" September of 1998 is of course much less than two years from April of 1997, but appellant was given credit for time he spent in custody in a secure facility prior to his SVPA trial. In No. F028684, Rains appeals from this order. He contends that (1) the SVPA violates various provisions of the Constitution of the United States and of the Constitution of the State of California; (2) the court committed error warranting reversal by admitting evidence of the effect of a "true" finding on an allegation that a defendant is a sexually violent predator (i.e., that he would be committed to a hospital for a period of two years and would receive treatment); and (3) he was denied due process of law by the court's instruction (patterned after CALJIC No. 2.90) on the meaning of "reasonable doubt."

In May of 1998 the court amended its commitment order to declare that appellant's commitment would expire on April 22, 1999, i.e., exactly two years after the court's order declaring him to be a sexually violent predator. In No. F031054 Rains has appealed from this amended order. He contends that the two-year commitment period should include, as the original commitment order did, the time he spent in custody in a secure facility prior to his trial. We ordered his No. F031054 appeal consolidated with his No. F028684 appeal. As we shall explain, we find no error warranting reversal of the "true" finding, and will affirm the May 1998 amended order. In the published portion of our decision we hold that, in an SVPA trial, evidence of the consequences of the jury's finding as to whether the defendant is or is not a sexually violent predator is not relevant and therefore not admissible.

---

*Judge of the Merced Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

## FACTS

At the outset we note that a "sexually violent predator" is defined in section 6600, subdivision (a) of the Welfare and Institutions Code as "a person who has been convicted of a sexually violent offense against two or more victims for which he or she received a determinate sentence and who has a diagnosed mental disorder that makes the person a danger to the health and safety of others in that it is likely that he or she will engage in sexually violent criminal behavior."[1] In an SVPA trial, "[t]he court or jury shall determine whether, beyond a reasonable doubt, the person is a sexually violent predator. . . ." (§ 6604.) In the present case, there was a stipulation that appellant had been convicted of a sexually violent offense against two or more victims for which he received a determinate sentence. He expressly made this admission to the court and out of the presence of the jury. The jury was told of the stipulation. The jury's task was therefore to decide whether appellant (1) "has a diagnosed mental disorder" and (2) if so, whether that disorder "makes the person a danger to the health and safety of others in that it is likely that he or she will engage in sexually violent criminal behavior." (§ 6600, subd. (a).) On these issues the People presented two witnesses, Dr. L.C. Miccio-Fonseca and Dr. Michael Malone. The defense called no witnesses.

Dr. Miccio-Fonseca, a clinical psychologist, met with appellant to assess his status as a sexually violent predator, to determine whether he presented a danger to the health and safety of others, and to assess whether he was likely to reoffend.

With respect to appellant's personal and physical history, Dr. Miccio-Fonseca testified that as a child appellant's mother attempted to kill him by suffocation and his father sexually molested and physically abused him. Additionally, appellant was molested by another adolescent and another male adult. Appellant was born with a diagnosis of minimal brain damage and suffered seizures resulting from an accidental, self-inflicted gunshot wound to the temporal lobe of his brain. As an adolescent appellant underwent a double mastectomy due to abnormal male breast development.

Appellant had a history of extensive drug abuse, and had attempted suicide on numerous occasions.

As to his criminal history, appellant had a history of sexually molesting young boys from the time he was 15 or 16 years old. In 1967 appellant was

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise stated.

placed at Atascadero State Hospital for a period of observation. He was found to be a mentally disordered sex offender who was not amenable to treatment, and who posed a risk to the health and safety of others. Dr. Miccio-Fonseca stated that appellant's records showed that he had been committed to the Atascadero State Hospital again in 1970 and in 1980.

Dr. Miccio-Fonseca testified that, during her interviews with appellant, he stated he did not feel he needed to do anything to prevent future incidents of sexual behavior with children because he did not feel he was harming children. Appellant stated that he felt he was "giving" something to the children he had molested and he thought of them as his sons. In Dr. Miccio-Fonseca's opinion, appellant was a pedophile and posed a high risk of reoffending.

Dr. Malone, a licensed psychologist, interviewed appellant and reviewed records regarding appellant's history. He also provided testimony regarding appellant's mental, physical, social and criminal history. Dr. Malone was of the opinion that appellant was a pedophile and posed a very high risk of reoffending.

## I.

### Constitutionality Issues*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## II.

### Evidence of the Consequences of a "True" Finding

Appellant contends the court erred in permitting Dr. Micco-Fonseca and Dr. Malone to testify about the consequences of a jury's "true" finding on the issue of whether a defendant in an SVPA case is a sexually violent predator. We agree.

Under the SVPA "[t]he court or jury shall determine whether, beyond a reasonable doubt, the person is a sexually violent predator." (§ 6604.) " 'Sexually violent predator' means a person who has been convicted of a sexually violent offense against two or more victims for which he or she received a determinate sentence and who has a diagnosed mental disorder that makes the person a danger to the health and safety of others in that it is likely that he or she will engage in sexually violent criminal behavior."

*See footnote, *ante*, page 1165.

(§ 6600, subd. (a).) In the present case the parties stipulated that appellant was a person who had been convicted of a sexually violent offense against two or more victims for which he received a determinate sentence. The jury was advised of this stipulation. The court therefore instructed the jury: "It is the People's burden to prove that: one, the Defendant has a diagnosed mental disorder and, two, such disorder makes Defendant a danger to the health and safety of others in that it is likely that he will engage in sexually violent criminal behavior." The consequences of a "true" finding have no relevance to either of these issues.

Respondent does not attempt to explain how this evidence was relevant to any issue in the case. Instead, respondent argues that because SVPA proceedings are civil and not criminal in nature, the "rules of evidence in criminal cases" do not apply. However the rule as stated in Evidence Code section 351, that only relevant evidence is admissible, applies to all cases, not just in criminal cases where "evidence of punishment is generally irrelevant to the question of guilt . . . ." (*People* v. *Alvarez* (1996) 49 Cal.App.4th 679, 687 [56 Cal.Rptr.2d 814].)

The more important issue, however, is whether this error requires reversal of the judgment. In our view, it does not. "A verdict or finding shall not be set aside, nor shall the judgment or decision based thereon be reversed, by reason of the erroneous admission of evidence unless: [¶] . . . [¶] . . . the error or errors complained of resulted in a miscarriage of justice." (Evid. Code, § 353.) "No judgment shall be set aside, or new trial granted, in any cause, on the ground . . . of the improper admission or rejection of evidence, . . . unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice." (Cal. Const., art. VI, § 13.) ■ In civil cases, a miscarriage of justice should be declared only when the court, after an examination of the entire cause, including the evidence, is of the opinion that it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error. (*Pool* v. *City of Oakland* (1986) 42 Cal.3d 1051, 1069 [232 Cal.Rptr. 528, 728 P.2d 1163].) This is the same standard of review utilized for reviewing the erroneous admission of evidence in a criminal case. (See *People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243]; *People* v. *Cahill* (1993) 5 Cal.4th 478, 501 [20 Cal.Rptr.2d 582, 853 P.2d 1037]; and *People* v. *Breverman* (1998) 19 Cal.4th 142, 173-174 [77 Cal.Rptr.2d 870, 960 P.2d 1094].) ■ In the present case, we see no such reasonable probability of a more favorable result to appellant, and thus no miscarriage of justice.

First, and foremost, the evidence that appellant was a sexually violent predator was undisputed. Two experts testified that he had a diagnosed mental disorder of pedophilia and that he was likely to reoffend.

Second, the testimony about the consequences of a "true" finding was relatively brief and was presented as a result of a juror's expressed concern that a "true" finding would result in sending the defendant not to a hospital but to prison even though appellant was not charged with any crime. Dr. Micco-Fonseca was asked what would happen if the jury found appellant to be a sexually violent predator. She responded "He will receive a civil commitment to a psychiatric facility and receive treatment there." She added that "[I]t's my understanding that it's subject to review every two years." She also testified briefly about the type of treatment she would expect appellant to receive at the psychiatric facility. Dr. Malone gave similar testimony.

Third, the court instructed the jury: "In your deliberations do not discuss or consider the subject of penalty or punishment. That subject must not in any way affect your verdict." The prosecutor did mention in his closing argument that a true finding would result in the defendant being "placed in a locked facility where he is to receive treatment." But he also stated in his argument: "You are not being asked to conclude what is going to happen to Mr. Rains. You are not being asked to conclude what should happen to Mr. Rains. And as soon as you begin to think that you are being asked to decide what should happen to him, you have stepped out of your function as jurors. Maintain your function as jurors to determine whether or not Mr. Rains is a sexually violent predator. That is your sole function. It is not your function to decide what should happen to him."

Fourth, appellant presented virtually no defense. He called no witnesses. His trial counsel's closing argument consisted of an argument that the jury could not make a "true" finding unless the jury found beyond a reasonable doubt that appellant would in fact reoffend (i.e., a misstatement of the standard of proof to be applied by the jury), and an argument that the defendant should not be detained in a hospital because he hadn't "done anything wrong."

Appellant relies on this court's opinion in *People* v. *Allen* (1973) 29 Cal.App.3d 932 [106 Cal.Rptr. 43]. In *Allen* the trial court erroneously permitted the introduction of evidence of the treatment defendant Allen would receive if the jury found him to be a mentally disordered sex offender (MDSO). However, the court pointed out that "the evidence on the issue of whether appellant was an [MDSO] is close" and "[t]wo psychiatrists testified that he fit the definition, and two testified that he did not." (*Id.* at p. 934.) Furthermore, in *Allen* the district attorney utilized the improper evidence in his argument to argue that if the defendant were not found to be an MDSO, he would go to jail, then come out and possibly reoffend and that " '[t]he

only way we can give him help is by this proceeding.' " (*Ibid.*) This was done even though "[n]owhere do the statutory provisions refer to the question of whether the person could benefit by treatment in a state hospital as being one for the jury's determination . . . ." (*Id.* at p. 935.) In contrast, the deputy district attorney in the present case told the jurors "[I]t is not your function to decide what should happen to" appellant. Under these circumstances, we cannot conclude that there was a miscarriage of justice.

## III., IV.*

.  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .

### DISPOSITION

The judgment is affirmed.

Thaxter, Acting P. J., and Harris, J., concurred.

On October 27, 1999, the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied January 25, 2000.

---

*See footnote, *ante*, page 1165.