Filed 10/1/13  P. v. Green CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>         Plaintiff and Respondent,<br><br>v.<br><br>GLEN FOSTER GREEN,<br><br>         Defendant and Appellant. | A134917<br><br>(Solano County<br>Super. Ct. No. VC17044) |

**I.**

**INTRODUCTION**

Glen Foster Green (appellant) appeals from a judgment, following a jury trial, committing him to the State Department of Mental Health (DMH) for an indeterminate period as a sexually violent predator (SVP) under the Sexually Violent Predators Act (SVPA).  (Welf. & Inst. Code, § 6600 et seq.)[1]  He contends the judgment must be reversed for a variety of reasons, including (1) the evidence was insufficient to support a current diagnosis of pedophilia; (2) the court erred in refusing to give an instruction

---

[1]  Unless otherwise indicated, all subsequent code references are to the Welfare and Institutions Code.  The SVPA provides for the involuntary civil commitment, for treatment and confinement, of an individual who is found, by a unanimous jury verdict (§ 6603, subds. (e), (f)), and beyond a reasonable doubt (§ 6604), to be a "sexually violent predator" (*ibid.*).  The term " '[s]exually violent predator' means a person who has been convicted of a sexually violent offense against one or more victims and who has a diagnosed mental disorder that makes the person a danger to the health and safety of others in that it is likely that he or she will engage in sexually violent criminal behavior." (§ 6600, subd. (a)(1).)

quantifying the risk of reoffense necessary to support a commitment; (3) the court erred by failing to instruct the jury sua sponte that an SVP commitment is for an indefinite time period; (4) the protocol governing his SVP evaluations is invalid; (5) commitment without the prospect of effective treatment violates his right to due process; and (6) the SVPA is an unconstitutional ex post facto law, improperly shifts the burden of proof, and violates his right to equal protection. We reject appellant's contentions and affirm the judgment.

## II.

## FACTS AND PROCEDURAL HISTORY

This is appellant's fifth appeal from successive orders finding that he meets the SVPA requirements for extended commitment. (See *People v. Green* (2000) 79 Cal.App.4th 921; *People v. Green* (Feb. 20, 2003, A098496 [nonpub. opn.]); *People v. Green* (Dec. 6, 2005, A109362 [nonpub. opn.]; *People v. Green* (Oct. 26, 2006, A112823 [nonpub. opn.].) Therefore, because this court is extremely familiar with this case, we need not discuss in detail the previous petitions to extend appellant's commitment as an SVP or his criminal history of qualifying sex offenses.

Instead, we focus on the most recent petition to commit appellant as an SVP filed by the Solano County District Attorney on February 16, 2007. The petition alleged appellant was currently in the custody of the DMH; and he had been evaluated and found to currently meet the statutory definition of an SVP. (See § 6600.) The petition attached two evaluations which concluded appellant has a diagnosed mental disorder that makes him a danger to the health and safety of others in that he is likely to engage in acts of predatory sexual violence without appropriate treatment and custody.

The matter proceeded to a jury trial where the People had the burden of proving beyond a reasonable doubt that appellant met all the SVP criteria. A person may be committed as an SVP only if "(1) the offender has been convicted of a qualifying sexually violent offense . . . ; (2) the offender has a diagnosable mental disorder; (3) the disorder makes it likely he or she will engage in sexually violent criminal conduct if released; and (4) this sexually violent criminal conduct will be predatory in nature."

2

(*Cooley v. Superior Court* (2002) 29 Cal.4th 228, 236.)  The People's experts, psychiatrist Dr. Mohan Nair and forensic psychologist Dr. Jeremy Coles, each testified they evaluated appellant and found that he met the criteria of an SVP.  They each diagnosed appellant with the mental disorder of pedophilia.  They testified that appellant had a substantial risk of reoffending and that they did not believe appellant could control his behavior.

Psychologist Dr. James Park and psychiatrist Dr. Alan Abrams, testified for appellant.  They found no indication appellant currently could be diagnosed with the mental disorder of pedophilia.  They believed he was not likely to reoffend if released from custody.

On March 8, 2012, a jury found the petition to be true and the court committed appellant to the DMH for an indeterminate term.  On March 9, 2012, appellant filed a timely notice of appeal.

## III.

## DISCUSSION

### A.  The Court Was Not Required to Give a Requested Instruction Quantifying the Risk of Reoffense

Appellant argues reversal is required because the court did not adequately instruct the jury on the risk of reoffense that is necessary to commit a person as an SVP.  By statute, an SVP must have a "diagnosed mental disorder that makes the person a danger to the health and safety of others in that it is *likely* that he or she will engage in sexually violent criminal behavior."  (§ 6600, subd. (a)(1), italics added.)  Appellant claims the court erred in refusing to give an instruction that would have more precisely defined the term "likely."

"Likely" has been judicially construed to mean " 'the person presents a substantial danger, that is, a serious and well-founded risk, that he or she will commit such crimes if free in the community.'  [Citation.]"  (*People v. Roberge* (2003) 29 Cal.4th 979, 982, italics omitted (*Roberge*).)  The risk of reoffense must be greater than a "mere possibility," but need not be "better than even," i.e., greater than 50 percent.  (*People v.*

3

*Superior Court (Ghilotti)* (2002) 27 Cal.4th 888, 922, italics omitted (*Ghilotti*).) The instruction given in this case, CALCRIM No. 3454, tracks this language.[2]

Appellant argues the standard instruction did not go far enough because it failed to "explain the requisite minimum level of risk that the jury must agree upon." He claims the court erred in refusing to give an amplifying instruction requested by defense counsel that, in order to find appellant to be an SVP, the jury must first find that he posed a "high risk" of reoffense. The requested instruction refers to a statement in *Ghilotti:* "The SVPA thus consistently emphasizes the themes common to valid civil commitment statutes, i.e., a current mental condition or disorder that makes it difficult or impossible to control volitional behavior and predisposes the person to inflict harm on himself or others, thus producing dangerousness measured *by a high risk* or threat of further injurious acts if the person is not confined. [Citations.]" (*Ghilotti*, *supra,* 27 Cal.4th at p. 920, italics omitted & added.)

The trial court was not required to give the requested instruction. As in any trial, the trial court in an SVP proceeding must instruct on the general principles of law that are necessary to the jury's understanding of the case. (*Roberge*, *supra*, 29 Cal.4th at p. 988.) Our Supreme Court has rejected the claim that a jury must be instructed that to be found an SVP, the person's " 'diagnosed mental disorder must render the person *unable to control* his dangerous behavior.' " (*People v. Williams* (2003) 31 Cal.4th 757, 763, original italics (*Williams*).) *Williams* held that the plain language of the SVPA "inherently encompasses and conveys to a fact finder the requirement of a mental disorder that causes serious difficulty in controlling one's criminal sexual behavior." (*Id.* at p. 759.) The *Williams* court reasoned that a mental disorder meeting the statutory criteria of the SVPA "must additionally produce an actual risk of violent reoffense" that

---

[2] The jury was instructed as follows: "A person is likely to engage in sexually violent predatory criminal behavior if there is a substantial, serious, and well-founded risk that the person will engage in such conduct if released into the community. The likelihood that the person will engage in such conduct does not have to be greater than 50 percent."

is sufficiently substantial, serious, and well-founded.  (*Id*. at p. 776.)  Jurors who are instructed using the statutory language of the SVPA necessarily understand that in order to be found to be an SVP, the defendant must have a seriously impaired capacity or ability to control violent criminal sexual conduct.  Therefore, no additional instructions are constitutionally required.  (*Id*. at p. 777.)

Here, the trial court instructed the jury with CALCRIM No. 3454, which employs the statutory terms used in the SVPA that *Williams* found satisfied constitutional requirements.  (*Williams*, *supra,* 31 Cal.4th at pp. 776-777.)  Based on *Williams*'s holding that the language of the SVPA inherently and adequately conveys the crucial elements necessary to find a defendant to be an SVP subject to indefinite commitment, no additional amplifying instruction was necessary.  (*Ibid*.; *Roberge*, *supra*, 29 Cal.4th at pp. 988-989.)

### B.  The Court Was Not Required to Give a Sua Sponte Instruction Informing the Jury That an SVP Commitment Is for an Indefinite Time Period

Appellant next contends the trial court should have instructed the jury sua sponte that a verdict finding appellant is an SVP would result in his indefinite commitment, "subject only to the limited future review protocol allowed by law."  Appellant argues that failing to instruct the jury on the consequences of its true finding "may give them the mistaken impression that a civil commitment is short term and allows for real review in the future."  This contention fails.

"The trial court has a sua sponte duty to instruct the jury on the general principles of law that are necessary for the jury's understanding of the case.  [Citation.]"  (*People v. Butler* (2010) 187 Cal.App.4th 998, 1013 (*Butler*).)  At appellant's SVP trial, the jury was asked to determine, based on the evidence presented by the parties, whether appellant is an SVP.  (§ 6604.)  The trial court properly instructed the jury on the principles of law governing its resolution of that issue.  The duration of any commitment to be imposed based on the jury's findings was irrelevant.  (See *People v. Allen* (1973) 29 Cal.App.3d 932, 935-938 [trial court erred in a mentally disordered sex offender

proceeding by allowing evidence regarding the type and length of treatment the defendant would receive]; *People v. Rains* (1999) 75 Cal.App.4th 1165 [same]; *People v. Calderon* (2004) 124 Cal.App.4th 80, 91 [it is "well established that a jury should not consider what will happen as a result of its verdict"].)  Accordingly, the trial court was not required to instruct the jury sua sponte regarding the consequences of an SVP finding.

### C.  Appellant Has Not Shown He Was Prejudiced by any Legal Flaw in the 2009 Protocol Governing SVP Evaluations

Appellant next maintains the 2009 standardized assessment protocol is not sufficiently detailed and provides "next to no real guidance for professionals." (Fn. omitted.)  By way of background, "[b]efore a petition for commitment may be filed, the SVPA requires a suspected SVP to undergo two psychological evaluations conducted pursuant to a protocol established by the [DMH].  Only if these evaluations result in a finding that the person, in effect, qualifies as an SVP does the SVPA authorize the filing of a commitment petition.  Recently, the protocol developed by the Department and used for many years was declared to be an unlawful 'underground regulation' because it was implemented without compliance with the Administrative Procedure Act [APA] . . . ." (*People v. Medina* (2009) 171 Cal.App.4th 805, 810-811; accord, *People v. Landau* (2013) 214 Cal.App.4th 1, 16 (*Landau*).)

Based on this authority, in November 2009, appellant filed a motion for new section 6601 evaluations and a new probable cause hearing, arguing that an underground regulation was used in his evaluations.[3]  (See, e.g., *In re Ronje* (2009) 179 Cal.App.4th

---

[3]  Section 6601 governs referral of individuals for SVP evaluation prior to release. It provides in pertinent part:  "The [DMH] shall evaluate the person in accordance with a standardized assessment protocol, developed and updated by the [DMH], to determine whether the person is a sexually violent predator as defined in this article.  The standardized assessment protocol shall require assessment of diagnosable mental disorders, as well as various factors known to be associated with the risk of reoffense among sex offenders.  Risk factors to be considered shall include criminal and psychosexual history, type, degree, and duration of sexual deviance, and severity of mental disorder."  (§ 6601, subd. (c).)

6

509, 513, disapproved of in *Reilly v. Superior Court* (2013) 57 Cal.4th 641, 652 (*Reilly*).)
On December 7, 2009, the court granted appellant's motion.

Appellant now claims the updated evaluations, which were prepared under DMH's 2009 protocol, were invalid because the 2009 protocol is not sufficiently detailed to be considered a "standardized assessment protocol" as called for in section 6601, subdivision (c). In discussing the meaning of the term "standardized assessment protocol" relative to DMH's 2009 protocol, appellant claims "[t]he 2009 SAP is not 'standardized' because it is left to the evaluators whether they are to use tests and which to use, and the questions to ask of individuals being assessed."[4]

"The court, not the agency, has 'final responsibility for the interpretation of the law' under which the regulation was issued. [Citations.]" (*Yamaha Corp. of America v. State Bd. of Equalization* (1998) 19 Cal.4th 1, 11, fn. 4 (*Yamaha Corp.*).) When a court reviews an agency's interpretation of a statute, however, the court "accords great weight and respect to the administrative construction. [Citation.]' [Citations.]" (*Id*. at p. 12.) By adopting the 2009 protocol and title 9, section 4005 of the California Code of Regulations pursuant to section 6601, DMH impliedly construed the statutory meaning of the term "standardized." When "an agency has adopted an interpretative rule in accordance with [APA] provisions—which include procedures (e.g., notice to the public of the proposed rule and opportunity for public comment) that enhance the accuracy and

---

**4** The 2009 protocol is partly codified in the California Code of Regulations, title 9, section 4005. Section 4005, which is entitled "Evaluator Requirements," provides: "The evaluator, according to his or her professional judgment, shall apply tests or instruments along with other static and dynamic risk factors when making the assessment. Such tests, instruments and risk factors must have gained professional recognition or acceptance in the field of diagnosing, evaluating or treating sexual offenders and be appropriate to the particular patient and applied on a case-by-case basis. The term 'professional recognition or acceptance' as used in this section means that the test, instrument or risk factor has undergone peer review by a conference, committee or journal of a professional organization in the fields of psychology or psychiatry, including, but not limited to, the American Psychological Association, the American Psychiatric Association, and the Association for the Treatment of Sexual Abusers."

reliability of the resulting administrative 'product'—that circumstance weighs in favor of judicial deference." (*Yamaha Corp.*, *supra*, at p. 13.)

Appellant neither claims nor demonstrates that DMH failed to comply with the APA when it adopted title 9, section 4005 of the California Code of Regulations. Appellant also offers no legislative history suggesting the Legislature intended any particular manner of standardization. Section 6601 does not expressly define "standardized assessment protocol," and it appears the Legislature left standardization to the expertise of DMH.

In any event, appellant has not shown that he was deprived of a fair trial or suffered any prejudice as a result of the use of the 2009 protocol. (*Reilly*, *supra*, 57 Cal.4th at p. 655 [defendant may obtain "relief arising from use of an invalid protocol in an SVP evaluation" only if he or she demonstrates that "the error was material"].) He was provided a constitutionally mandated jury trial and, at that trial, two experts testified that based on their training and experience, appellant was an SVP as that term is statutorily defined. After hearing the evidence presented, the jurors concluded, beyond a reasonable doubt, that appellant was an SVP within the meaning of section 6600, subdivision (a)(1). Appellant does not claim that the use of the 2009 protocol harmed his ability to mount a defense or in any way influenced the jury in finding him to be an SVP. Because appellant received a full and fair trial on the ultimate issue in the case, we conclude appellant was not prejudiced by the error he has alleged. (*Reilly*, *supra*, at p. 656 [where defendant "was found to be an SVP under the new protocol, it is clear that the 2007 protocol error did not materially affect the outcome of his probable cause hearing"].)

**D. Improperly Placing the Content of Other Doctors' Opinions Before the Jury**

Appellant claims it was error to admit testimonial evidence that nontestifying experts had formed the opinion appellant was a pedophile, a danger to the community, and likely to reoffend. This argument is based on defense counsel's cross-examination of Dr. Coles where he was asked whether adequately trained professionals could reach different conclusions based on the same evidence. Dr. Coles responded that in "a

8

hypothetical situation" this was possible.  Defense counsel then asked:  "And you don't think that's possible in this case, right?  There's only one reasonable conclusion and it's yours?"  Dr. Coles replied:  "No.  What I said is that virtually every treatment provider that's come in contact with [appellant] over the past 30 years has made [the same] diagnosis."

Defense counsel objected that Dr. Coles was testifying to unreliable hearsay.  The court responded:  "Well, I'm going to overrule the objection, because your question kind of invited that response.  So overruled.  But we'll leave it and move on."  The court then admonished the jury that Dr. Coles's testimony regarding other professionals' diagnoses was admissible only for the limited purpose of explaining his opinion and not for any other purpose.

Appellant argues that Dr. Coles's testimony "use[d] the opinions of others to bolster his own conclusion," which prejudiced appellant in obtaining a fair trial.  In making this argument, he relies principally on *People v. Campos* (1995) 32 Cal.App.4th 304 (*Campos*).  The *Campos* court held that the trial court properly permitted the People's only witness, a psychiatrist with the DMH, to testify that she relied on other medical evaluations in forming her opinion that defendant met all of the MDO criteria.  However, the *Campos* court found the trial court erred in permitting the psychiatrist to testify that nontestifying experts concurred in the psychiatrist's opinion regarding the defendant's MDO status.  (*Id.* at pp. 307-308.)  *Campos* reasoned: " '[D]octors can testify as to the basis for their opinion [citation], but this is not intended to be a channel by which testifying doctors can place the opinion of innumerable out-of-court doctors before the jury' " who are not subject to cross-examination.  (*Id.* at p. 308, quoting *Whitfield v. Roth* (1974) 10 Cal.3d 874, 895; *People v. Young* (1987) 189 Cal.App.3d 891, 913 ["The rule which allows an expert to state the reasons upon which his opinion is based may not be used as a vehicle to bring before the jury incompetent evidence"].)

However, the error in *Campos* was found to be harmless, since the psychiatrist's references to the other professional opinions consumed only a small portion of her lengthy testimony and the remainder of that testimony easily supported the jury's

9

determination that defendant met the MDO criteria. Thus, it was not reasonably probable that a result more favorable to Campos would have been reached in the absence of the improper evidence. (*Campos*, *supra*, 32 Cal.App.4th at pp. 308-309.)

As in *Campos,* even if the court erred in allowing Dr. Coles's challenged testimony, the error was harmless. (*People v. Watson* (1956) 46 Cal.2d 818, 836.) Dr. Coles offered this testimony on cross-examination, when he was questioned as to whether reasonable treatment providers could come to different conclusions about whether appellant could be diagnosed with pedophilia. " '[A] broader range of evidence may be properly used on cross-examination to test and diminish the weight to be given the expert opinion than is admissible on direct examination to fortify the opinion. [Citation.]' [Citation.]" (*People v. Montiel* (1993) 5 Cal.4th 877, 924.) Furthermore, the court immediately admonished the jury that the other diagnoses could not be considered for their truth, but only as they supported Dr. Coles's opinion. Based on the court's clarifying admonishment and the overwhelming evidence that appellant met the criteria of an SVP, we conclude it is not reasonably probable that a result more favorable to him would have been reached in the absence of the challenged evidence. (*Campos*, *supra*, 32 Cal.App.4th at pp. 308-309.)

### E.  Substantial Evidence Supports the Jury's Finding that Appellant's Paraphilia Currently Exists

Appellant next challenges the sufficiency of the evidence to support his SVP commitment. He argues, "with respect to proof of the 'currency' of the claimed disorder, there was a stand-off between state and defense experts in terms of the continued existence of appellant's pedophilia and, if it exists, whether he is able to control his urges and impulses." In questioning the "partially-informed judgments" of the prosecution's experts, appellant notes that he "had never been found with pornographic contraband, he had never acted in a way that would reflect on the existence of pedophilic urges . . . , and he had not articulated in past meetings with psychologists that he experienced fantasies or distress rooted in a current medical condition."

"In reviewing the record to determine the sufficiency of the evidence, this court may not redetermine the credibility of witnesses, nor reweigh any of the evidence, and must draw all reasonable inferences, and resolve all conflicts, in favor of the judgment. [Citation.]" (*People v. Poe* (1999) 74 Cal.App.4th 826, 830; *People v. Mercer* (1999) 70 Cal.App.4th 463, 466 (*Mercer*).) Generally, "the direct evidence of one witness who is entitled to full credit is sufficient for proof of any fact." (Evid. Code, § 411.) It is up to the fact finder to decide what weight to give the expert opinions. (See *In re Scott* (2003) 29 Cal.4th 783, 823.)

It is true that "[a]n expert's opinion which rests upon guess, surmise or conjecture, rather than relevant, probative facts, cannot constitute substantial evidence. [Citations.]" (*Garza v. Workmen's Comp.App. Bd.* (1970) 3 Cal.3d 312, 318, fn. 3.) However, the record does not demonstrate that the prosecution's experts' diagnoses or opinions in this case were so flawed. Instead, the record shows that the People's experts considered appellant's full history and relied upon established DSM-IV diagnostic criteria and narrative descriptions of the mental disorders in making their present diagnoses. In assessing the risk of reoffense, they considered the Static 99 and other studies and applied their own clinical judgment. They explained in detail the specific risk factors they considered relevant. Both experts testified that pedophilia is generally understood by the profession to be a chronic condition and explained their reasons for determining that appellant's mental disorder persists. Consequently, the opinions of the prosecution's experts were not a matter of pure speculation or guesswork and, therefore, their testimony constituted substantial evidence supporting the jury's verdict. (See *Mercer*, *supra*, 70 Cal.App.4th at pp. 466-467.)

In a related argument, appellant claims the jury was "left with no real guidance about what 'evidence' is necessary to prove a disorder 'currently' plagues an individual." However, he cites to no portion of the record where he requested an additional instruction on this point and he has not, in his appellate briefs, suggested clarifying language. "Once the trial court adequately instructs the jury on the law, it has no duty to give clarifying or

11

amplifying instructions absent a request. [Citation.]" (*Butler*, *supra*, 187 Cal.App.4th at p. 1013.) Appellant's claim is without merit.

### F. Appellant's Commitment Did Not Violate Due Process for Lack of Effective Treatment

Appellant contends his involuntary and indefinite hospitalization under the SVPA violates due process because the evidence failed to establish he would receive appropriate and effective treatment during his commitment. He argues that if "the state has nothing to offer in the way of meaningful treatment, then it cannot be allowed to simply lock away human beings based on speculative anxiety and fear that appellant or others might commit a sexual crime if released."

Our Supreme Court rejected a similar due process challenge in *Hubbart v. Superior Court* (1999) 19 Cal.4th 1138 (*Hubbart*). There, the defendant asserted that involuntary confinement as an SVP violates due process "unless it is coupled with a statutory guarantee of treatment providing a 'realistic opportunity to be cured.' " (*Id*. at p. 1164.) At the outset, the court rejected the suggestion that "the Legislature cannot constitutionally provide for the civil commitment of dangerous mentally impaired sexual predators unless the statutory scheme guarantees and provides 'effective' treatment." (*Ibid.*) Amenability to treatment is not required for a finding that an individual is an SVP, nor is it required in order to receive treatment as an SVP. (§ 6606, subd. (b).)

Appellant primarily relies upon *People v. Feagley* (1975) 14 Cal.3d 338, but that case was distinguished in *Hubbart*, which explained, "We invalidated the MDSO procedure under which [Mr.] Feagley was committed because it resulted in a complete denial of treatment under conditions of confinement so penal as to constitute 'cruel and unusual punishment.' [Citation.]" (*Hubbart*, *supra*, 19 Cal.4th at pp. 1167-1168, fn. 29.) Appellant's situation can be similarly distinguished from the situation in *Feagley*. We conclude appellant's claim is foreclosed by *Hubbart*, *supra*, 19 Cal.4th 1138.

12

**G.  The SVPA Is Not an Unconstitutional Ex Post Facto Law and Does Not Improperly Shift the Burden of Proof or Violate Appellant's Right to Equal Protection**

We next consider various constitutional challenges posed by appellant to the latest version of the SVPA.  As originally enacted, the SVPA provided for a two-year commitment, established procedures for release of an SVP before the expiration of the two-year period, and allowed recommitment upon expiration of the two-year period only if it was proved beyond a reasonable doubt that the person currently met the statutory criteria.  (*People v. McKee* (2010) 47 Cal.4th 1172, 1185-1186 (*McKee I*).)

In November 2006, the SVPA was amended to make it more difficult for an SVP to obtain release.  "[U]nder Proposition 83, an individual SVP's commitment term is indeterminate, rather than for a two-year term as in the previous version of the [SVPA].  An SVP can only be released conditionally or unconditionally if the DMH authorizes a petition for release and the state does not oppose it or fails to prove beyond a reasonable doubt that the individual still meets the definition of an SVP, or if the individual, petitioning the court on his [or her] own, is able to bear the burden of proving by a preponderance of the evidence that he [or she] is no longer an SVP.  In other words, the method of petitioning the court for release and proving fitness to be released, which under the former [SVPA] had been the way an SVP could cut short his [or her] two-year commitment, now becomes the only means of being released from an indefinite commitment when the DMH does not support release."  (*McKee I*, *supra*, 47 Cal.4th 1187-1188, fn. omitted.)

Appellant contends the post-Proposition 83 SVPA violates his constitutional right to due process because it imposes on him "the burden to prove by a preponderance of the evidence that he . . . is entitled to release" after being committed as an SVP.  He also contends the SVPA violates the federal constitutional prohibition against ex post facto laws, because it is punitive and was applied to his conduct prior to its enactment.  These contentions were considered and rejected by our Supreme Court in *McKee I*.  In *McKee I*, *supra*, 47 Cal.4th at page 1195, the court held the amended SVPA does not violate the ex

13

post facto clause of the federal Constitution. Additionally, in *McKee I*, the court concluded that "the requirement that [an individual], after [an] initial commitment, must prove by a preponderance of the evidence that he [or she] is no longer an SVP does not violate due process." (47 Cal.4th at p. 1191.) We are bound by the decisions of our Supreme Court. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.) Therefore, we reject appellant's due process and ex-post facto claims.

Appellant also contends his involuntary SVP commitment violates his federal constitutional right to equal protection because the SVPA treats him less favorably than similarly situated individuals committed under other statutes, such as MDO's, individuals who have found to be not guilty by reason of insanity (NGI's) and criminal defendants sentenced to life in prison. In *McKee I*, *supra*, 47 Cal.4th at page 1203, the Supreme Court found SVPs and MDOs are similarly situated because, inter alia, both " 'have been found, beyond a reasonable doubt, to suffer from mental disorders that render them dangerous to others. . . . At the end of their prison terms, both have been civilly committed to the [DMH] for treatment of their disorders. . . . [T]he purpose of the MDO Act and the SVPA is the same: to protect the public from dangerous felony offenders with mental disorders and to provide mental health treatment for their disorders.' [Citations.]" (*Ibid.*) The court concluded the disparate treatment afforded SVP's and MDO's under the law, whereby SVP's suffer indefinite commitment and carry the burden of proving they should no longer be committed, "raises a substantial equal protection question that calls for some justification by the People." (*Ibid.*) Accordingly, the Supreme Court remanded the case to the trial court "to determine whether the People . . . can demonstrate the constitutional justification for imposing on SVP's a greater burden than is imposed on MDO's and NGI's . . . in order to obtain a release from commitment." (*Id.* at pp. 1208-1209, fn. omitted.)

The remand in *McKee I* resulted in a 21-day evidentiary hearing and a subsequent finding by the trial court that the People met their burden to justify the disparate treatment of SVP's. (See *People v. McKee* (2012) 207 Cal.App.4th 1325, 1330 (*McKee*

14

*II*).)  McKee appealed the trial court's decision, which was upheld by the Fourth District in *McKee II.*

The appellate court concluded that the People showed " 'that the inherent nature of the SVP's mental disorder makes recidivism as a class significantly more likely[;] . . . that SVP's pose a greater risk [and unique dangers] to a particularly vulnerable class of victims, such as children;' and that SVP's have diagnostic and treatment differences from MDO's and NGI's, thereby supporting a reasonable perception by the electorate that passed Proposition 83 that the disparate treatment of SVP's under the amended Act is necessary to further the state's compelling interests in public safety and humanely treating the mentally disordered.  [Citation.]"  (*McKee II*, *supra*, 207 Cal.App.4th at p. 1347.)  The appellate court concluded that "the disparate treatment of SVP's under the Act is reasonable and factually based and was adequately justified by the People at the evidentiary hearing on remand."  (*Id.* at p. 1348.)  The SVPA, therefore, did not violate equal protection.  (*Ibid.*)  Thereafter, the Supreme Court denied a petition for review.  (*People v. McKee,* review den. Oct. 10, 2012, S204503.)  Subsequent appellate decisions have followed *McKee II.*  (See *People v. McDonald* (2013) 214 Cal.App.4th 1367, 1377 (*McDonald*); *Landau*, *supra*, 214 Cal.App.4th at pp. 45-48; *People v. McCloud* (2013) 213 Cal.App.4th 1076, 1085-1086; *People v. McKnight* (2012) 212 Cal.App.4th 860, 863-864.)

Appellant argues the *McKee II* court misunderstood and misapplied the strict scrutiny test and applied the wrong standard of review.  These arguments were considered and rejected in *McDonald*, *supra*, 214 Cal.App.4th at pages 1378-1382, and in *Landau*, *supra*, 214 Cal.App.4th at pages 47-48.  We agree with those decisions on this point.

As explained in *McKee II*, we also agree that appellant's equal protection rights were not violated by treating him differently than MDO's and NGI's for commitment purposes, because the indeterminate commitment procedures legitimately advance a compelling state interest in protecting the public from an SVP, like appellant, who carries a substantial, well-founded risk of reoffending and cannot control his behavior and who

15

poses a greater risk to a particularly vulnerable class of victims such as children. We therefore reject defendant's equal protection challenge.

Appellant further contends SVP's are treated unfavorably as compared to criminals sentenced to life in prison. He argues that he "has been given a life term absent almost all of the procedural protections afforded those charged with crimes, convicted and then sent to prison for life terms." However, appellant has not demonstrated that the appellate court in *McKee II* incorrectly concluded that there was a compelling state interest justifying the differential treatment of SVP's as compared to MDO's and NGI's. Appellant has not made any argument to show that a different conclusion would pertain as to the differential treatment of SVP's as compared to individuals criminally convicted and sentenced to life terms. Therefore, appellant's claim fails because he has not shown SVP's are similarly situated to that class of criminals.

**H. Error in the Petition—Wrong Term of Confinement Alleged**

Appellant claims he was denied due process because the petition sought only a two-year commitment, but the trial court ordered an indefinite commitment. As we have already explained, prior to 2006, an SVP was committed to the custody of the DMH for a two-year term, and the term of commitment could be extended for additional two-year periods. (Former § 6604, as amended by Stats. 2000, ch. 420, § 3; former § 6604.1, as amended by Stats. 2000, ch. 420, § 4.) On September 20, 2006, the Governor signed into law Senate Bill No. 1128, which amended the SVPA effective immediately. (Stats. 2006, ch. 337, § 62.) Among other changes, the amended SVPA provides for an indeterminate term of commitment. (Stats. 2006, ch. 337, § 55.) Voters later approved Proposition 83, amending the SVPA effective November 8, 2006. (See Cal. Const., art. II, § 10, subd. (a).) Proposition 83 amended the SVPA to provide that an SVP's commitment term is "indeterminate." (§ 6604; see § 6604.1.) Currently, a person found to be an SVP under the SVPA is subject to an indeterminate term of involuntary civil commitment. (*People v. Whaley* (2008) 160 Cal.App.4th 779, 785-787.)

As the Attorney General concedes, the petition in appellant's case, which was filed just months after Proposition 83's enactment, reflected the earlier statutory scheme and

16

incorrectly stated that the prosecution was seeking to commit appellant for an additional period of two years. Appellant contends that because "the state inexplicably requested only a two-year commitment . . . [i]t cannot get more later on" and the commitment order should be amended to reflect only a two-year commitment. We disagree.

The error was harmless for at least two reasons. First, appellant does not claim he lacked actual notice that he was subject to an indeterminate term. After all, the indeterminate term of commitment was the statutorily mandated term and was not the result of a discretionary charging decision. (Compare *People v. Mancebo* (2002) 27 Cal.4th 735, 749.) Evidencing that appellant was not misled by the error in the petition, appellant filed a motion in the trial court arguing that an indeterminate commitment would violate his due process and equal protection rights. In other words, he was perfectly aware that the district attorney was seeking an indeterminate sentence.

Second, appellant cannot show how the petition's erroneous reference to a two-year term, instead of an indeterminate term, had any affect on his defense. In *People v. Carroll* (2007) 158 Cal.App.4th 503, immediately prior to trial seeking to extend defendant's commitment as an SVP, the prosecutor struck the petition's language seeking a two-year term and substituted language seeking an indeterminate term. (*Id.* at pp. 507-508.) Thereafter the appellate court rejected the defendant's argument that "the law in effect at the time the petition was filed should control, and so the trial court was authorized to recommit [the defendant] only for a two-year, not an indeterminate, term." (*Id.* at pp. 508-509.) The court reasoned that the amendment to the petition under the SVPA was timely and that the allegations against which the defendant had to defend, that is, that he had a current mental disorder and he was likely to engage in sexually violent criminal behavior in the future, were not affected by the amendment. (*Id.* at p. 512.) The *Carroll* court also emphasized that "the petition at all times referred to the applicable code section; the statute itself gave notice of the increased commitment term, and [defendant] was presumed to be aware of its existence. [Citations.]" (*Ibid.*) Thus, for the reasons stated in *Carroll,* we reject appellant's claim that he was deprived of procedural due process.

17

## IV.

## DISPOSITION

The judgment is affirmed.


_____
RUVOLO, P. J.


We concur:


_____
REARDON, J.


_____
HUMES, J.