Filed 3/29/18

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| Conservatorship of the Person and Estate of P.D. | 2d Civil No. B281606 (Super. Ct. No. 56-2016-00488726-MH-CN-VTA) (Ventura County) |
| PUBLIC GUARDIAN OF THE COUNTY OF VENTURA, Petitioner and Respondent, v. P.D., Objector and Appellant. | |

P.D. appeals an order appointing the Public Guardian of the County of Ventura (Public Guardian) as the conservator of his person and estate after the jury found beyond a reasonable doubt that he is gravely disabled as a result of mental disorder. (Welf. & Inst. Code,[1] § 5000 et seq.; Lanterman-Petris-

---

[1] All statutory references are to the Welfare and Institutions Code.

Short Act (LPS Act).)  The trial court's instructions informed the jury about the duration and types of treatment that may be ordered if a conservatorship is established.  It was error to give instructions concerning possible consequences should a party prevail.  Nevertheless, we affirm because the error was harmless.

FACTUAL AND PROCEDURAL HISTORY

P.D. suffers from schizophrenia.  He was arrested for violating a restraining order that protects his family.  The court found him incompetent to stand trial.  It committed him to Sylmar Health and Rehabilitation Center for mental health treatment to restore his competency.  After the criminal charges were dismissed, Public Guardian filed a petition for a conservatorship on the ground that P.D. is gravely disabled as a result of his mental disorder.

Murray Weiss, M.D., testified that P.D. was diagnosed with a mental disorder 10 years earlier, has delusions, and requires medication to control his symptoms.  When not taking his medication, P.D. becomes angry, aggressive, and "impulse disordered."  Dr. Weiss said that P.D. does not accept his diagnosis and believes his medications are "poison drugs."

Dr. Weiss opined that P.D. is unable to provide for his basic needs of food, clothing, and shelter as a result of his mental disorder.  Without a conservatorship, P.D. will stop taking his medication and be "homeless and hungry and living from day-to-day and probably arrested for violating the restraining order when he goes back to his family residence."

P.D. testified that he does not suffer from a mental disorder and does not need to take medication.  He said that if released, he will return to his family or seek help from unnamed friends, none of whom he has contacted to discuss his plans.  He

2

denied the existence of an active restraining order which prevents him from contacting his wife and which formed the basis of his prior arrest.

The court instructed the jury and both counsel agreed that Public Guardian was required to prove the elements of grave disability beyond a reasonable doubt. And the court instructed the jury with CACI 4004, which provides: "In determining whether [P.D.] is gravely disabled, you must not consider or discuss the type of treatment, care, or supervision that may be ordered if a conservatorship is established."

But the court also gave two special instructions about the consequences of the verdict. The first one provides: "If you find [P.D.] is gravely disabled, the court may establish a conservatorship of the person and estate. [¶] The conservator shall have the right to require the conservatee to obtain medical treatment for any mental disorder that makes him gravely disabled. The conservator may place the conservatee in a state, county, medical, psychiatric, nursing or other state-licensed facility, or private hospital, or in a residential center or a board and care home. [¶] The conservator will have the right to receive and expend funds for the benefit of the conservatee, but is required to account to the court at specified times for his expenditures and receipts."

The second special instruction provides: "A conservatorship automatically terminates after one year, unless at the end of that period, another petition is filed, and it is proven the conservatee is presently gravely disabled in a court of law. During the year, the conservatee is entitled to a hearing on whether he is presently gravely disabled. The conservatee may also end the conservatorship during the year, based on a

3

qualitied opinion that the conservatee is no longer gravely disabled."

## DISCUSSION

P.D. contends the instructions taken as a whole created confusion and uncertainty about what matters the jury could consider and violated his right to due process. The special instructions were erroneous, but we are not persuaded that a miscarriage of justice resulted.

The LPS Act authorizes the superior court to appoint a conservator of the person for one who is gravely disabled. (§ 5350.1; *Conservatorship of John L.* (2010) 48 Cal.4th 131.) Grave disability exists when "as a result of a mental health disorder, [the person] is unable to provide for his . . . basic personal needs for food, clothing, or shelter." (§ 5008, subd. (h)(1)(A).) The proposed conservatee has a right to jury trial on the question of grave disability at which the party urging conservatorship has the burden of proof beyond a reasonable doubt. (*Conservatorship of John L.*, at p. 143.) We review a contention of instructional error de novo. (*Conservatorship of Walker* (1987) 196 Cal.App.3d 1082, 1091-1092.)

LPS commitment proceedings are subject to the due process clause because significant liberty interests are at stake. (*Conservatorship of John L.*, *supra*, 48 Cal.4th at p. 150.) But an LPS proceeding is civil. (*Conservatorship of George H.* (2008) 169 Cal.App.4th 157, 162 [no sua sponte duty to instruct jury that LPS conservatorship not necessary for a person who can accept voluntary treatment].) "[T]he stated purposes of the LPS Act foreclose any argument that an LPS commitment is equivalent to criminal punishment in its design or purpose." (*Conservatorship of John L.*, at p. 151.) Thus, not all safeguards required in

4

criminal proceedings are required in LPS proceedings. (*Ibid*. [due process did not require personal presence of proposed LPS conservatee at trial].)

In criminal cases, jurors must not consider the consequences of the verdict. (*People v. Moore* (1968) 257 Cal.App.2d 740, 750.) For example, in *People v. Sorenson* (1964) 231 Cal.App.2d 88, 91, the prosecutor committed prejudicial misconduct when he argued in a sanity trial the defendant should be imprisoned, not hospitalized, because a doctor might "turn[] him loose." The only question before the jury was whether or not he was sane when he committed the crime. (*Ibid*.) The argument was an improper "appeal to the jurors to abdicate their lawful role and to decide the issue of sanity in terms of their own opinion that imprisonment, not hospitalization, was [the] defendant's proper fate," and "to usurp functions reposed by statute in other hands." (*Id*. at p. 92.) The argument also misstated the law by suggesting that if the defendant were hospitalized, a doctor could release him without a judicial hearing. (*Ibid*.) The evidence was close and a miscarriage of justice required reversal. (*Id*. at p. 94.)

P.D. asks us to extend the rule applied in criminal cases to LPS proceedings as a matter of due process because of the important liberty interests at stake. He points out that the rule has been extended to civil commitment proceedings for state hospital inmates found not guilty by reason of insanity, mentally disordered offenders (MDO), and sexually violent predators (SVP) in *People v. Kipp* (1986) 187 Cal.App.3d 748, 751 (*Kipp*), *People v. Collins* (1992) 10 Cal.App.4th 690, 696 (*Collins*), and *People v. Rains* (1999) 75 Cal.App.4th 1165, 1167 (*Rains*). Those cases did not rely on due process as a basis for their holdings, but they did

5

conclude that instructions, argument, and evidence about the consequences of the verdict were improper.

In *Kipp*, *supra*, 187 Cal.App.3d 748, an instruction that an inmate of a state hospital would be released without further court supervision or future treatment if the jury found him "to no longer be a danger to [himself] or other[s]," was nonprejudicial. (*Id*. at p. 750.) There could "be no purpose to advising a jury of the consequences of its decision . . . except to improperly deflect its attention from the issue of the defendant's current mental condition." (*Id*. at p. 751.) But the error was not prejudicial because "[t]he prosecution's evidence that [Kipp] still suffered from severe mental disorders and was not yet ready for release [from] the hospital was consistent, overwhelming, essentially unrebutted, and even found support in Kipp's own testimony." (*Id*. at pp. 751-752.)

In *Collins*, *supra*, 10 Cal.App.4th 690, an instruction that the verdict "would determine whether [an MDO] should be hospitalized or released on parole," required reversal. (*Id*. at p. 695.) The prosecutor "devote[d] his opening statement and closing argument to the consequences of the verdict" and other significant instructional errors combined to result in "cumulative errors [which] were prejudicial." (*Id*. at pp. 696, 698.)

In *Rains*, *supra*, 75 Cal.App.4th 1165, a trial court erred when it allowed the prosecution's experts in an SVP trial to testify that a "true" finding would result in civil commitment to a psychiatric facility for treatment and that the commitment would be reviewed every two years. (*Id*. at p. 1171.) The evidence was irrelevant to the two questions before the jury: (1) whether the defendant had a diagnosed mental disorder, and (2) whether that disorder makes him a danger to the health and safety of others in

6

that it is likely he will engage in sexually violent criminal behavior.  (*Ibid*.)  But the error did not result in a "miscarriage of justice," (*id*. at p. 1170) because the evidence that Rains was an SVP was undisputed, Rains presented no defense, the testimony was a brief response to a juror's concern that a "true" finding would result in a prison sentence, the trial court instructed the jury not to consider the consequences of the verdict, and the prosecutor told the jury, "'[i]t is not your function to decide what should happen to'" Rains.  (*Id*. at pp. 1170-1172.)

As in *Kipp*, *Collins*, and *Rains*, information about the consequences of conservatorship for P.D. was irrelevant to the only question before P.D.'s jury:  whether, as a result of a mental disorder, he is unable to provide for his basic personal needs for food, clothing, or shelter.  (§ 5008, subd. (h)(1)(A).)  But no miscarriage of justice resulted here.  Other instructions clearly stated the burden of proof and identified the sole question before the jury.  Public Guardian focused on the elements of grave disability and the burden of proof in his opening statement and closing argument, and did not refer to the special jury instructions which are challenged here.  Counsel for both parties emphasized the correct instructions and the evidence was not close.  Dr. Weiss's testimony that P.D. suffers from delusions which impair his ability to provide for his own basic needs was based on personal observations and was uncontradicted by any expert or third party.  P.D. reinforced this testimony when he said he would return to a job which does not exist and a spouse who is a protected party under an active restraining order.  P.D. was unable to articulate any rational plan for meeting his basic personal needs.  The jury unanimously agreed that P.D. is

7

gravely disabled beyond a reasonable doubt.  There is no indication in the record that the jury was confused about its task.

Where an instruction in a criminal case relieves the prosecutor of its burden to prove every element of the offense beyond a reasonable doubt, the error is structural and reversal is required.  (*Sullivan v. Louisiana* (1993) 508 U.S. 275, 281-282.)  But this is a civil case.  (*Conservatorship of John L.*, *supra*, 48 Cal.4th at p. 150.)  And even if we were to apply the standard of *Chapman v. California* (1967) 386 U.S. 18, on the theory that the special instructions invited the jury to consider irrelevant information and thus undermined P.D.'s due process right to a fair trial (see *Bruton v. United States* (1968) 391 U.S. 123, 131, fn. 6), we would find it harmless beyond a reasonable doubt.

DISPOSITION

The order is affirmed.

CERTIFIED FOR PUBLICATION.

TANGEMAN, J.

We concur:

GILBERT, P. J.

PERREN, J.

8

Vincent J. O'Neill, Judge

Superior Court County of Ventura

_____

Todd W. Howeth, Public Defender, Russell L. Baker, Senior Deputy Public Defender, for Objector and Appellant.

Leroy Smith, County Counsel, Mitchell B. Davis, Assistant County Counsel, for Petitioner and Respondent.